CASE No. 941.

## STEELE v. C., C. & A. RAILROAD COMPANY.

1. The order of a Circuit judge granting leave to a party to make a motion before another judge, is without force.
2. A motion on the minutes for a new trial, upon the ground of excessive damages, made without argument, was refused by the trial judge, and an appeal therefrom dismissed by the Supreme Court for want of jurisdiction. *Held*, that a succeeding Circuit judge had no power to grant an application for a new trial upon a case settled, but based upon the same grounds as before.
3. The decision of one judge is not subject to be reviewed by another; and a motion once heard and decided, will only be reviewed upon a new state of facts arising after the decision.
4. Neither the judgment nor the order refusing a new trial on the minutes, could be opened as matter of favor under Section 197 of the code of procedure, because of a misinterpretation of law by counsel.
5. An expression of opinion *ore tenus* by one of the justices of the Supreme Court, after judgment pronounced, cannot affect the law of the case.

Before WALLACE, J., York, November, 1879.

This case is fully stated in the opinion of the court.

*Mr. J. H. Rion,* for appellant.

A motion may always be renewed upon sufficient grounds. 1 *Till. & Shear. Pr.* 432; 4 *Abb. Pr.* 404; 4 *Wait's Pr.* 612; 26 *How. Pr.* 396; *Voorh. Code,* 634 *b;* 75 *N. Y.* 599. The code, Section 197, authorizes the relief asked here. Counsel here, as other distinguished counsel in Brickman's case and others, thought Judge Aldrich's order appealable. And the direct provisions of the statute misled. The motion now is not too late. *Wait's An. Code* 333. Motion renewed was under circumstances different from when motion was made; but if facts were not different, court had power to hear. 33 *Barb.* 654; 74 *N. Y.* 379. Even the Supreme Court allows a rehearing. Judges Aldrich and Mackey do not object; and another judge may hear. 1 *S. C.* 141; 3 *Wait's Pr.* 423. See, too, 3 *Wait's Pr.* 442, *s.*

*Mr. W. B. Wilson,* contra.

November 22d, 1880.    The opinion of the court was delivered by

McGOWAN, A. J.    In July, 1878, John G. Steele, the plaintiff, brought an action against the Charlotte, Columbia and Augusta Railroad Company for damages on account of personal injuries received by him when a passenger on the railroad of the said company, in an accident at the bridge over the South Fork of Fishing creek, in York county, November 23d, 1877.    The case was tried before Judge Aldrich, September, 1878, and, after much testimony, the jury rendered a verdict for the plaintiff for $10,000.    A motion was made on the minutes of the judge for a new trial on the grounds—

" 1. Because the verdict was contrary to the legal preponderance of the testimony.

" 2. Because the damages are excessive."

Judge Aldrich refused to grant the motion.    An appeal was taken from the order refusing the motion and the Supreme Court dismissed the appeal, not upon the merits, but upon the ground that the decision of the Circuit judge upon the facts was final and could not be reviewed by this court.    *Steele* v. *Charlotte, Columbia and Augusta R. R. Co.*, 11 *S. C.* 590.

May 3d, 1879, the attorney of the defendant corporation, after notice and on copies of the brief, the order of the Supreme Court and the affidavits, made a motion before Judge Mackey, at chambers, " for a new trial, and also for an order staying all proceedings upon the judgment of the plaintiff until the determination of this motion.    The following are the affidavits referred to :

" State of South Carolina, county of Fairfield.—Personally appeared James H. Rion, and makes oath that he, as attorney for the Charlotte, Columbia and Augusta Railroad Company, defendant in the case of John G. Steele *v.* Charlotte, Columbia and Augusta Railroad Company, made the motion for a new trial in said case upon the judge's minutes, before his Honor, Judge A. P. Aldrich, the presiding judge, and that at the time of making the motion deponent was not aware of the decision of

the Supreme Court in the case of Brickman *v.* South Carolina Railroad Company, and hence did not support his motion by an argument, he, at that time, supposing that the refusal of the presiding judge to grant the motion would be reviewable in the Supreme Court. That deponent is informed and believes that his Honor, the presiding judge, was also of the opinion that his refusal to grant the motion was reviewable in the Supreme Court. That deponents' inquiries and information produce the firm belief on his part that the Circuit judges and the bar of the state were not aware that the Supreme Court of the state would not review such refusal, before the publication of Volume VIII., South Carolina Reports, which were issued since said motion was made.

"JAMES H. RION.

"Sworn to before me, this 14th day of April, 1879.

"HENRY N. OBEAR, *N. P.*"

"State of South Carolina, county of Fairfield.—Personally appears James H. Rion and makes oath that on the 23d day of April, 1879, the Supreme Court of said state rendered a decision in the case of John G. Steele *v.* Charlotte, Columbia and Augusta Railroad Company, in which they did not pass upon the merits, and dismissed the appeal without prejudice to any right of the defendants; and at the time of rendering said decision the said court *ore tenus* stated that there was nothing to prevent the defendants from applying to the Circuit judge for a re-hearing of this motion for a new trial.

"JAMES H. RION,<br>"*Attorney for defendants.*"

"Sworn to before me, this 23d day of April, 1879.

"HENRY N. OBEAR, *N. P.*"

Judge Mackey, after the affidavits were read and argument heard, refused the motion for a new trial, but July 26th, 1879, granted an order "that all proceedings under the judgment herein, be and the same are hereby stayed and enjoined, pending the determination of a motion for a new trial, to be made on behalf of the defendants herein at the next ensuing term of the Court of Common Pleas of the county of York."

From this order the plaintiff appealed upon the following grounds:

· "1. Because it is respectfully submitted that his Honor had no jurisdiction in the premises, and that said order and decree are without the authority of law.

"2. That his Honor erred in holding that a motion for a new trial could be made at the next ensuing term of the Court of Common Pleas for York county.

"3. That in the proceedings had before his Honor no such application as above was made and no notice thereof given to the plaintiff or his attorneys.

"4. That said injunction was not in accordance with law, no levy having been made or affidavit that the same was threatened, and no bond required of defendant in said order.

"5. That said cause was *res adjudicata*, having been heard and decided by the Supreme Court, and that the motion for leave to renew motion for new trial before the Circuit judge who heard the cause had also been refused by said Supreme Court.

"6. That the motion for a new trial before Judge Aldrich was made *upon the case as heard*, and on the sole grounds that the verdict was contrary to the evidence, and excessive, and no exception was taken to his rulings upon the law pending said trial, and that defendants cannot now renew their motion for a new trial before any Circuit judge or Court of Common Pleas."

Whilst this appeal was pending in the Supreme Court, the defendants, upon the papers before referred to and the decree of Judge Mackey, made a *third motion* for a new trial before Judge Wallace, sitting in term time for York county, who heard the motion, and November 7th, 1879, ordered that "said motion is hereby refused upon the ground that I have no power to grant it. That proceedings upon the plaintiff's judgment be stayed until the determination by the Supreme Court of the appeal from this order, which, it is agreed by the counsel, shall be heard by said court at the November Term, 1879, in connection with the appeal now pending in the above case, and which is now on the calendar of said court."

The defendants excepted to this order and appeal to this court for that, " His Honor held that he had no power to grant the motion for a new trial then made."

Judge Mackey's order granted leave to the defendants to renew their motion for a new trial before the judge who might hold the court for the next ensuing term for York county, and in the meantime restrained the enforcement of the judgment. The plaintiff appealed from this order, but afterwards consented that his appeal might be considered in connection with defendants' appeal from Judge Wallace's order. We shall not now consider whether Judge Mackey, at chambers, had the right to make the order appealed from. So much of that order as granted leave to make the motion before another judge was without force, as the judge before whom the motion was to be made, could, if necessary, as well grant leave as any other judge ; and so much of that order as restrained the plaintiff from proceeding on his judgment until the motion could be made, was adopted by Judge Wallace and extended until the appeals could be heard, and is no longer important. We shall, therefore, confine ourselves to the last appeal, the consideration of which, so far as practical issues are concerned, will dispose of the whole matter.

Was it error of law for Judge Wallace to refuse to grant a new trial, on the ground that he had no power to grant it, Judge Aldrich having refused it? The original motion for a new trial was exclusively upon the facts of the case. It is quite certain that Judge Aldrich, who heard the case, had the right to hear and determine that motion, and, if he had refused to do so, upon the ground that he had no power, it would have been error in law and appealable to this court. " Circuit Courts shall have the power to grant new trials in cases where there has been a trial by jury; for reasons for which new trials have usually been granted in the courts of law in the United States." *Gen. Stat.* 497. The phrase " Circuit Courts shall " clearly means not in union, but each separately. The right to grant implies the right to refuse, and Judge Aldrich did refuse the motion for a new trial. Was that order made by the authority provided by law to decide applications in cases of this character and final in its nature, or was it

reviewable for error by any authority-known to the laws of the state? The terms of the code cited, indicate that the Circuit judge is the appellate authority provided in that class of cases, as it directs upon what principles new trials shall be granted. The law makes the Circuit judges acting separately, the *Court of Appeals,* to hear and determine motions for new trials upon the facts in jury cases. The Circuit judge hears the case and is supposed to be familiar with the facts, but whether this is the wisest provision that could be made is a matter for the legislature and not for us to discuss. It is certain that the decision of the Circuit judge refusing the new trial on the facts, could not be reviewed by this court, which, in the class of cases to which this belongs, is only a "court for the correction of errors at law." There was no error of law charged in the case and, therefore, it is clear that this court, as it has decided, could not review the order of Judge Aldrich. Is there any other authority competent to consider and review it on the ground of error of judgment? We think not. The Court of Common Pleas is a unity, although its jurisdiction is administered by a number of judges who are, in some sense, the exponents of the court. When one of these judges makes a decision upon the merits of a matter within his jurisdiction, that is not merely the personal opinion of the judge, but a judgment of the Court of Common Pleas, which exhausts the power of the court upon that subject and must stand until reversed or set aside in the manner prescribed by law. There is no appeal from one Circuit judge to another. All are of equal dignity and have the same right to pronounce the judgments of the court. One Circuit judge upon the same state of facts, has no power to change, alter or reverse a decision of a brother judge of the same Circuit. Otherwise, there would be no end to litigation. No one could tell where it would stop. Nothing could be considered as finally adjudged, and all rights of person and property would be set afloat. This rule results from the nature of the case and well-established principles. Its propriety is so obvious that it has not been thought necessary to enforce it by constitutional prohibition or express enactment, but for the sake of symmetry and convenience in practice it has been embodied in our 61st rule of the Circuit Courts, which declares that "if any application for an

order be made to any judge, and such order be refused, in whole or in part, or be granted conditionally, or on terms, no subsequent application upon the same state of facts, shall be made to any other judge; and if upon such subsequent application, any order be made, it shall be revoked," &c. This is precisely the same as the 31st rule of the New York courts, and Mr. Wait, in his practice, tells us that in that state " the courts enforce the rule rigidly." It seems that there are doubts whether the refusal of a motion even on the merits, is, as in the decision of a case, absolutely *res adjudicata.* The judge may sometimes reconsider his own orders, but all the authorities agree as to the general doctrine, " that the decision of one judge is not subject to be reviewed by another." 1 *Greenleaf on Ev.* 543 ; *Smith* v. *Spalding,* 30 *How. Pr.* 340 ; *Dollfus* v. *Frosch,* 5 *Hill* (*N. Y.*) 495 ; *Cazneau* v. *Bryant,* 4 *Abb.* 103; 3 *Waite's Pr.* 423 ; 4 *Waite* 611 ; *Till. & Shear.* 430.

But conceding this, it is said that there are circumstances under which the Court of Common Pleas will allow its own decisions to be assailed and set aside in its own courts. That is true, but we think it is never allowed indirectly by an appeal from one judge to another, or by renewing a motion before one judge which has been refused by another *on the same state of facts.* The court will not change its own orders (except they are merely administrative) without a direct proceeding to set aside one order and substitute another for good cause ; and the fact that one of the judges may differ in judgment upon the subject, from the judge who made the order complained of, is not of itself regarded as sufficient cause.

A motion once heard and decided fully will only be reviewed *upon a new state of facts arising after the decision.* The new state of facts must be such as to make a new case, as misconduct in the judge granting the order, newly-discovered evidence, or that the ground of the order has been removed, as in the case of *Gilchrist* v. *Comfort,* 26 *How.* 394, where an order refusing a new trial was based upon an adjudication, which was afterwards reversed. We cannot see that the facts of this case were changed in any important particular between the first application and the last. When the motion was made before Judge Wallace, *the*

*facts,* which the affidavits did not touch, were the same as when Judge Aldrich refused the original motion. The truth is, the motion before Judge Wallace was not to vacate for cause the order of Judge Aldrich, nor an application for a re-hearing, but a renewed motion seeking a *different judgment* in the matter of the new trial, simply ignoring the order of Judge Aldrich. It was in substance *really,* an appeal from the judgment of one judge to that of another.

But it is ingeniously argued that the order of Judge Aldrich may be regarded as in the class which are sometimes " opened as matter of favor." Mr. Whittaker says these arise more particularly under the power of relief conferred by the code, (*Gen. Stat.* 612, § 197) as follows: " The court may,  *   *   * upon such terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment order or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect," &c. The relief allowed by this provision does not apply to this case. That section of the code was intended only for the relief of parties who, by reason of some mistake, inadvertence, &c., may have lost the opportunity to be present at the trial or to be represented there, as is suggested by the words " taken against him." In commenting on this provision, Freeman says that " if the parties were represented at the trial, they can only obtain relief by an application made in conformity to the rules of procedure provided by law in reference to *new trials.* But if they were *not at the trial* or not represented there on account of some mistake or excusable neglect, then their remedy is not by application for a new trial, but by an application addressed to the discretion of the court and made under the statute authorizing *relief* to be granted from judgments rendered against a party through " his mistake, inadvertence or excusable neglect." *Freeman on Judgments,* § 105 ; *McKinley* v. *Tuttle,* 34 *Cal.* 239 ; *Williams ex parte, In re Campbell* v. *County of Charleston,* 7 *S. C.* 71 ; *Gibbes* v. *Elliott,* 8 *S. C.* 60. In this case the defendants were ably represented at the trial and made vigorous defence. It is difficult to see what " relief " could be granted against an order " taken against him," when the complaint was for non-action in refusing to grant the order for a new trial.

If this "relief provision" could be made to embrace an order refusing a new trial, a case for relief was not made out. No relief can be granted against the judgment, for so far as that is concerned there is no allegation of any mistake, inadvertence, surprise or excusable negligence. As to the order refusing the new trial, it is stated in one of the affidavits that the defendants' attorney omitted to argue the motion, induced by "not being aware of the decision of the Supreme Court in the case of Brickman *v.* South Carolina Railroad Company, and supposing that the refusal of the presiding judge to grant the motion would be reviewable." That was not enough to make out a case for relief "against the order" for several reasons. It was a mistake *in law.* In all cases the surprise complained of must be in some *matter of fact* and not of law. 3 *Waite's Pr.* 403. The mistake was in matter extrinsic and had no connection with the case, except as it influenced the conduct of the attorney. The new matter must be such as could not by reasonable diligence have been known. As we understand it, the case of Brickman, then not published, declared no new principle as to the hearing of appeals. The same doctrine had been held in the cases of *State* v. *Bailey,* 1 *S. C.* 1; *Floyd* v. *Abney, Id.* 114; *Abrahams & Son* v. *Kelly & Barrett,* 2 *S. C.* 235; *Byrd* v. *Small,* 2 *S. C.* 388; *Massey* v. *Adams,* 3 *S. C.* 254.

Besides, it does not appear that the order of Judge Aldrich would probably have been different if the distinguished attorney of the defendants had argued the motion with all his accustomed ability. Judge Aldrich was fresh from hearing the whole case, and may not have desired further argument. It is not unusual for the most zealous and able lawyers to submit such motions without argument to the judge who heard the case. The judge does not say that his judgment was in any way affected by the want of argument on the facts, and we think it improbable that his opinion would have been changed by any argument that could have been made. We cannot suppose that his judgment was affected by any opinion he might have as to the appealable nature of his order, or that he failed to consider the subject gravely, and made merely a *pro forma* order in the expectation that the Supreme Court would correct it. The high character of the

judge forbids any such supposition. Whittaker, in his Practice, states the rule as follows: "In motions for new trials on the ground of surprise or newly-discovered evidence, the strongest possible case must be made out. * * * Enough ought to be shown to raise at least a fair and *bona fide* inference that had the surprise not occurred, or had the newly-discovered evidence been introduced, the result might and probably would have been different." 2 *Whittaker's Pr.* (*4th ed.*) 465.

The expression of opinion *ore tenus* on the part of one of the members of this court at the time the order was announced dismissing the appeal, can have no bearing upon the law of the case. The court had just decided that they had no jurisdiction therein, and what was then said could not possibly be considered in the light of an "interpretation as to the effect of the opinion." It was simply the statement of an impression, prompted probably by regret at the necessary result of the case and sympathy for the losing party. In no possible view could it amount to more than an individual opinion upon a matter which had not been argued, and which, from its character, was not and could not be before the court for adjudication.

This was an action sounding in damages and peculiarly for the jury. We may think the verdict was too large, but we have no standard by which to measure it with exactness. Courts are more reluctant to grant new trials for excessive damages in actions for personal injury than in any other class of cases. The judge who heard the testimony, and who, by the law, was the proper officer to decide the question, refused to grant a motion for a new trial. An appeal was taken to the Supreme Court and there dismissed for want of jurisdiction. At a subsequent term of the Circuit Court the motion was renewed before another judge, who refused it on the ground that under the circumstances he had no power to grant it. We cannot say that this was error. The appeals should be dismissed, and it is so ordered.

McIver, A. J., concurred.