24190

The STATE, Respondent v. Ellis FRANKLIN, Appellant.

(456 S.E. (2d) 357)

Supreme Court

FINNEY, J., dissented and filed opinion.

*Chief Atty. Daniel T. Stacey* and *Asst. Appellate Defender Robert M. Pachak,* of *South Carolina Office of Appellate Defense,* Columbia, *for appellant.*

*T. Travis Medlock, Atty. Gen., Donald J. Zelenka, Chief Deputy Atty. Gen.,* Columbia, and *Wade S. Kolb, Jr., Solicitor, Third Judicial Circuit,* Sumter, *for respondent.*

Heard Sept. 21, 1994.

Filed Jan. 30, 1995; Refiled Mar. 13, 1995.

## ORDER

Petitioner asks this Court for a rehearing in *State v. Franklin,* Op. No. 24190 (S.C. Sup. Ct. filed January 30, 1995). We grant the petition. The majority adheres to the original majority opinion, and the dissenter files an amended dissent.

The original opinion and the amended dissent shall be re-filed and published in the Davis Advance Sheet.

It is so ordered.

/s/ ERNEST A. FINNEY, JR., C.J.
/s/ JEAN M. TOAL, A.J.
/s/ JAMES E. MOORE, A.J.
/s/ JOHN H. WALLER, JR., A.J.
/s/ A LEE CHANDLER, A.A.J.

TOAL, Justice:

A jury convicted Ellis Franklin of murder. The same jury, in a bifurcated proceeding, found the aggravating circumstances of murder while in the commission of criminal sexual conduct, murder while in the commission of burglary, murder while in the commission of larceny with the use of a deadly weapon, and murder while in the commission of physical torture. Franklin was sentenced to death. We affirm.

## FACTS

Jennifer Martin attended her cousin's wedding on the afternoon of August 30, 1991. After the wedding, Martin together with several members of her family returned to the home of Martin's maternal grandmother. The other family members dispersed, but Martin remained at the home of her grandmother until shortly after 11:00 p.m. Martin then drove a short distance to her mother's home to use the telephone.[1] She telephoned her fiance around 11:13 p.m. The conversation lasted approximately ten minutes.

Shortly after midnight the same evening, Martin's automobile was found across town from her mother's home. The automobile was parked with the engine running, lights on, and

---

[1] Martin's mother left her residence shortly before Martin arrived.

doors open abutting a building. After determining the owner-ship of the automobile, the police proceeded to the home of Martin's mother. There the police found the badly beaten, par-tially nude body of Jennifer Martin. Ellis Franklin was ar-rested the following morning.

The jury found Ellis Franklin guilty of murder and the fol-lowing aggravating circumstances: murder while in the com-mission of criminal sexual conduct, murder while in the com-mission of burglary, murder while in the commission of lar-ceny with use of a deadly weapon, and murder while in the commission of physical torture. Franklin was sentenced to death. This appeal followed.

## LAW/ANALYSIS

### Guilt Phase

1. Did the trial judge err in ruling Franklin competent to stand trial solely on the basis of a written report finding men-tal capacity?

Upon motion of the solicitor, the trial judge ordered Franklin to submit to a mental examination pursuant to S.C. Code Ann. § 44-23-410(1) or § 44-23-410(2) (1990) to determine Franklin's competency to stand trial.[2] The state entered the resulting report into the record. Franklin's attorney objected to the report as hearsay. The trial judge overruled the objec-tion and found Franklin competent to stand trial.

Section 44-23-410(2) specifically provides "[t]he report of the examination is admissible as evidence in subse-quent hearings pursuant to Section 44-23-430." *See also State v. Lee*, 274 S.C. 372, 264 S.E. (2d) 418 (1980) (mental ex-amination reports submitted pursuant to S.C. Code Ann. § 44-23-410(2)). Thus, the report is a statutory exception to the rule against hearsay. *See Sangster v. State*, 312 Md. 560, 541 A. (2d) 637 (1988) (competency report properly admitted under statute). We find Franklin's argument meritless and affirm.

---

[2]Franklin makes several arguments concerning the trial judge's ruling that he was competent to stand trial. First, Franklin argues that there was no competency hearing. Next, Franklin claims that because he was to be exam-ined by at least two examiners the procedures outlined in § 44-23-410(1) were not followed. These arguments are presented for the first time on appeal. Thus, they are not preserved for appellate review. *State v. Hoffman*, — S.C. —, 440 S.E. (2d) 869 (1994).

2. Did the trial court err in its sua sponte refusal to allow defense counsel to strike a juror previously stricken in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed. (2d) 69 (1986)?

At the conclusion of the drawing of the jury, both the defense and prosecution made *Batson* motions. Following the *Batson* hearing, the trial judge sustained the defense motion as to one black female. The trial judge also sustained the prosecution's motion as to three white males and one white female. The jury panel was quashed and a new list was drawn from the entire qualified panel. The qualified jurors from which the list was drawn included all those who were previously the subject of the *Batson* motions.

Defense counsel attempted to strike the first white male presented who the trial judge previously ruled was stricken in violation of *Batson*. The trial judge disallowed the strike and sat the juror. Franklin claims this was error. We disagree.

In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed. (2d) 69 (1986), the United States Supreme Court declared striking a venire person solely on the basis of race unconstitutional. *Batson* specifically left the remedy for striking a juror based upon race to each state. *Id.* at 99, n. 24, 106 S.Ct. at 1724-25, n. 24, 90 L.Ed. (2d) at 90, n. 24. South Carolina first addressed the remedy for *Batson* violations in *State v. Jones*, 293 S.C. 54, 358 S.E. (2d) 701 (1987). In *Jones*, we held that when the solicitor violates *Batson*, "the jury shall be quashed and the process of selecting the jury shall start *de novo*." *Id.* at 58, 358 S.E. (2d) at 704. *Jones* recognized that "members of the tainted jury and all persons who were struck" may be placed back in the jury venire. *Id.* at 58, n. 3, 358 S.E. (2d) at 704, n. 3. *Jones*, however, did not address the procedure when, as here, a party attempts to strike from the second venire a person previously ruled stricken in violation of *Batson*.

Since our decision in *Jones*, the principles enunciated in *Batson* have been expanded.[3] The Supreme Court has held

---

[3] *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. —, 114 S.Ct. 1419, 128 L.Ed. (2d) 89 (1994) (unconstitutional to strike based on gender of venire person); *Georgia v. McCollum*, 505 U.S. —, 112 S.Ct. 2348, 120 L.Ed. (2d) 33 (1992) (defendant may not exercise peremptory challenges in racially discriminatory manner); *Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed. (2d) 411 (1991)

that the juror has a constitutional right not to be excluded from the jury because of race or gender. *See Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed. (2d) 411 (1991). Thus, "a party's right to use preemptory challenges can be subordinated to a venire person's constitutional right not to be improperly removed from jury service." *Jefferson v. State,* 595 So. (2d) 38, 41 (Fla. 1992). "While striking the venire and beginning selection over with a new jury pool may protect the constitutional rights of the defendant, it does nothing to remedy the recognized discrimination against those improperly removed from the jury." *Id.* at 40.

The majority of jurisdictions addressing the question of whether the trial judge may seat a juror improperly excluded in violation of *Batson* have found no error in seating such a juror.[4] The rationale for allowing the trial judge the discretion to seat the improper juror is sound. As noted in *People v. Moten,* 159 Misc. (2d) 269, 603 N.Y.S. (2d) 940 (1993):

> To hold otherwise would inadvisably reward a party for his own improper conduct, as would the declaration of a mistrial, which, in my view is an inappropriate remedy where the court is confronted with a valid *Batson . . .* challenge. The declaration of a mistrial, as an alternative to a difficult decision involving a remedy for a *Batson . . .* violation, merely avoids the critical issue and is inappropriate since such a declaration would *give the offending party exactly what he wanted, namely, a different jury panel.* Thus, it would reward him for the very discrimination which *Batson . . .* [was] designed to prevent. [Emphasis added.]

---

(defendant need not share race with improperly excluded juror in order to object); *Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed. (2d) 660 (1991) (private litigant may not exercise peremptory challenges in racially discriminatory manner).

[4] *Griffin v. State,* 610 So. (2d) 354 (Miss. 1992) (no error in seating juror improperly excluded in violation of *Batson*); *State v. Grim,* 854 S.W. (2d) 403 (Mo. 1993) (proper remedy for *Batson* seat juror); *State v. Aldret,* 606 So. (2d) 1156 (Fla. 1992) (no error in seating juror improperly excluded by defendant); *Jefferson v. State,* 595 So. (2d) 38 (Fla. 1992) (no error in seating juror improperly excluded by state); *People v. Moten,* 159 Misc. (2d) 269, 603 N.Y.S. (2d) 940 (1993); *State ex rel. Curry v. Bowman,* 885 S.W. (2d) 421 (Tx. Crim. App. 1993); *Contra People v. Smith,* 21 Cal. App. 4th 342, 25 Cal. Rptr. (2d) 850 (2d Dist. 1993) (relying on prior California Supreme Court decision which predates *Batson*).

*Id.*, 603 N.Y.S. (2d) at 947.

Nor do we believe the defendant's constitutional right to a fair and impartial jury is in any way violated by this procedure. "It is an affront to justice to argue that a fair trial includes the right to discriminate against a group of citizens based upon their race." *Georgia v. McCollum*, 505 U.S. —, —, 112 S.Ct. 2348, 2358, 120 L.Ed. (2d) 33, 50 (1992). "Peremptory challenges are not constitutionally protected fundamental rights." *Id.* Franklin was not denied his peremptory challenge. Rather, he was simply prohibited from exercising it in a racially discriminatory manner. We hold once a new venire has been selected in compliance with *Jones, supra*, "that it is within the trial judge's discretion to fashion the appropriate remedy under the particular facts of each case and, as long as neither party's constitutional rights are infringed, that remedy may include the seating of an improperly challenged juror." *Jefferson*, 595 So. (2d) at 41.

Our decision today does not impact *Jones*. *Jones* did not consider the case where a party attempts repeatedly to strike a prospective juror in violation of *Batson*. We do not accept the argument of Franklin and the dissent that *Jones* mandates the continued right to discriminate against a prospective juror on an unconstitutional basis. Nor do we accept the proposition that *Jones* requires the trial judge in all instances to "give the offending party exactly what he wanted, namely," a jury panel which unconstitutionally excludes a particular juror. *People v. Moten*, 159 Misc. (2d) 269, 603 N.Y.S. (2d) 940, 947 (1993).

Here, the jury selection process began "a second time" as mandated by *Jones. See Black's Law Dictionary* 392 (5th ed. 1979) (De novo. Anew; afresh; a second time). Only defense counsel's unconstitutional strike was prohibited. Franklin does not challenge the trial judge's ruling that Cantley was first stricken in violation of *Batson*. Nor is there any indication in the record that events occurred after the first strike which would have given defense counsel a legitimate reason to strike Cantley. We further find no error in the trial judge prohibiting defense counsel from rearguing his *Batson* defense. *Steele v. Charlotte, C & A.R. Co.*, 14 S.C. 324 (1880) (motion heard and decided will only be reviewed on a new state of facts arising after the decision). Accordingly, defense counsel

is not prohibited from bringing to light facts justifying striking the prospective juror which arose after the initial *Batson* hearing. In the instant case, Appellant's counsel conceded there were no new facts supporting the constitutionality of the second attempt to strike Cantley. It is the claimed right to unconstitutionally strike a prospective juror over and over again which is before us today. Such an affront to justice is neither mandated nor condoned by *Jones.* We affirm.

3. Did the trial court err when it failed to obtain appellant's waiver of the right to personally make final argument to the jury in the guilt phase?

Franklin did not personally exercise his statutory right to make a final argument to the jury in the guilt phase nor did he waive this right on the record. *See* S.C. Code Ann. § 16-3-28 (Supp. 1993) (defendant has right to argue to jury in guilt and penalty phase of death penalty trial). Franklin was tried after our decision in *State v. Torrence,* 305 S.C. 45, 406 S.E. (2d) 315 (1991). Absent an *in favorem vitae* review, when there is no on-the-record waiver of defendant's right to address the jury in the guilt phase or the penalty phase of the trial, there must be a contemporaneous objection. *State v. Hall,* 312 S.C. 95, 439 S.E. (2d) 278 (1994), *cert. denied,* — U.S. —, 114 S.Ct. 2770, 129 L.Ed. (2d) 883; *State v. Rocheville,* 310 S.C. 20, 425 S.E. (2d) 32 (1993), *cert. denied,* — U.S. —, 113 S.Ct. 2978, — L.Ed. (2d) —. Otherwise, the issue is not preserved for appellate review. *State v. Hall,* 312 S.C. 95, 439 S.E. (2d) 278 (1994), *cert. denied,* — U.S. —, 114 S.Ct. 2770, 129 L.Ed. (2d) 883; *State v. Rocheville,* 310 S.C. 20, 425 S.E. (2d) 32 (1993), *cert. denied,* — U.S. —, 113 S.Ct. 2978, — L.Ed. (2d) —; *see also State v. Hoffman,* 312 S.C. 386, 440 S.E. (2d) 869 (1994) (issue presented for first time on appeal not preserved for appellate review).

### Sentencing Phase

4. Did the trial judge err in allowing the introduction of photographs of the crime scene and of the victim taken at an autopsy during the sentencing phase?

Seventeen photographs of the crime scene and ten slides of Martin's body taken at the autopsy were admitted into evidence over defense counsel's objections during the sentencing phase of the trial. Franklin claims these photographs were

highly prejudicial and served no purpose other than to arouse passion in the jury. We disagree.

Franklin was charged with the aggravating circumstances of physical torture. The photographs of the murder scene depicted Martin's tortured body and the instruments of that torture. Most of the photographs depicted the crime scene with the body at a distance. Two photographs, State's exhibits 40 and 90, were particularly disturbing. State's exhibit 40 showed a closeup view of Martin's battered face, eyes rolled back, teeth turned backwards and missing from the pre-mortem beating. State's exhibit 90 showed the naked genital area of the body with a portion of a broomstick allegedly used as an instrument of torture underneath her buttocks.

"[I]n sentencing proceedings, the trial court may permit the introduction in . . . aggravation. . . . [P]hotographs which depict the bodies of the murder victims in substantially the same condition in which the defendant left them" when material and relevant to an aggravating circumstance. *State v. Kornahrens*, 290 S.C. 281, 289, 350 S.E. (2d) 180, 185-86 (1986), *cert. denied*, 480 U.S. 940, 107 S.Ct. 1592, 94 L.Ed. (2d) 781 (1987). The photographs were highly relevant to the aggravating circumstance of physical torture. The criteria is not, as Franklin argues, that photographs become inadmissible because they graphically depict a gruesome scene. Rather, the question is whether the photographs are unfairly prejudicial so as to outweigh the probative value. *See Kornahrens, supra*. To constitute unfair prejudice, the photographs must create a "tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one." *State v. Alexander*, 303 S.C. 377, 401 S.E. (2d) 146, 149 (1991). The photographs here depicted precisely the aggravating circumstance that they were intended to show. The relevance of the photographs and their probative value on the issue of physical torture was great enough to negate the risk of the jury basing its decision on an improper passion.

Franklin's objection to the introduction of the slides taken at autopsy is equally without merit. These slides depicted pre-mortem wounds to Martin's body. Prior to taking the slides, the body and specific wounds were cleaned. The slides were simply not the sort which this Court held inadmissible in *State*

*v. Patrick,* 289 S.C. 301, 345 S.E. (2d) 481 (1986) (autopsy photographs with considerable blood and no material purpose) *overruled on other grounds by Casey v. State,* 305 S.C. 445, 409 S.E. (2d) 391 (1991) or *State v. Middleton,* 288 S.C. 21, 339 S.E. (2d) 692 (1986) (autopsy photographs of victim's scalp pulled away from skull and surgically opened vaginal cavity calculated to inflame). The slides were entered into evidence for the same purpose as the photographs of the scene, to more clearly depict the full extent of the pre-mortem physical torture Martin suffered and to substantiate the testimony of the pathologist.

Franklin claims that because trial counsel did not cross-examine the pathologist that the testimony was uncontroverted, and, therefore, the photographs and slides were without probative value. We disagree.

The jury could not have understood from the pathologist's testimony the extent of the physical torture Martin suffered. The issue of aggravating circumstances remained viable throughout the sentencing phase of the trial. We find the probative value of the slides in this case clearly outweighed any prejudicial effect they may have had on the jury. We affirm.

5. Did the trial judge err in allowing the reply testimony of Dr. Dunlap at the penalty phase concerning Franklin's mental condition when Dr. Dunlap relied on the reports of others and the reports were not introduced?

The State called Dr. Dunlap ("Dunlap"), a psychiatrist, to rebut expert witnesses the defense presented in mitigation. Following the State's direct examination of Dunlap, defense counsel moved to strike Dunlap's testimony. The trial judge denied the motion. Franklin claims this was error. We disagree.

Dunlap admitted he had not personally examined Franklin, and that he based his opinions on various reports. Defense counsel had copies of the same reports relied on by Dunlap. Although each of the defense expert witnesses personally examined Franklin, these witnesses also relied upon some of the same reports.

The question of whether the expert testimony of a psychiatrist who did not examine the defendant is admissible is a question of state law. *Barefoot v. Estelle,* 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed. (2d) 1090 (1983). As there

are no constitutional barriers to the admission of Dunlap's testimony, we turn to South Carolina law.[5] Franklin relies on *State v. Burton*, 302 S.C. 494, 397 S.E. (2d) 90 (1990). *Burton, supra*, held the expert "may give his opinion based upon personal observations or an answer to a properly framed hypothetical. . . . The hypothetical question, however, should be based upon facts supported by the record." *Id.* at 499, 397 S.E. (2d) at 92. *Burton* does not require firsthand knowledge by the expert. *Burton* merely limits the basis of expert opinion to either personal observations or facts that have been admitted into evidence. Defense counsel did not base his objection on the reports not having been entered into the record. Rather, he argued to the trial judge that Dunlap's testimony was inadmissible because Dunlap did not personally examine Franklin.

Franklin's reliance on *Burton* is misplaced for an additional reason. The *Burton* trial took place prior to the adoption of Rule 24(b), SCRCrimP. Franklin's trial was subsequent to the adoption of Rule 24(b); thus, Rule 24(b), SCRCrimP applies to this case.

Rule 24(b), is entitled "Expert Testimony" and provides as follows:

(b) Bases of Opinion Testimony by Experts. The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

Rule 24(b) mirrors Fed. R. Evid. 703. Under Rule 703, an expert may base her opinion on hearsay evidence which is not admissible, so long as that evidence is the type reasonably relied upon by other experts in the field. *Baumholser v. Amax Coal Co.*, 630 F. (2d) 550 (7th Cir. 1980). In *United States v. Lawson*, 653 F. (2d) 299 (7th Cir. 1981), *cert. denied*, 454 U.S.

---

[5] We recognize that other courts have decided the issue with varying results. *See e.g. Moore v. Grantham*, 599 S.W. (2d) 287 (Tex. 1980) (expert's opinion is not admissible when based solely on hearsay reports which are not in evidence; opinion that is partially based on hearsay may be admissible); *contra Duckett v. State*, 797 S.W. (2d) 906 (Tx. Crim. App. 1990) (without citation court held proper to admit expert testimony on child sexual abuse syndrome when expert did not examine victim).

1150, 102 S.Ct. 1017, 71 L.Ed. (2d) 305 (1982), the court held that a psychiatrist who testified for the prosecution could base his opinion on reports prepared by persons who had examined the defendant.

Most recently, the North Carolina Supreme Court affirmed a death penalty conviction when a psychiatrist who never examined the defendant testified for the State. *State v. Daniels*, 337 N.C. 243, 446 S.E. (2d) 298 (1994). We agree with the majority in *Daniels*, there is no requirement that the defendant be personally examined by the psychiatrist. "[A]n expert's specific knowledge is neither determinative of his qualifications as an expert nor of the admissibility of his opinion into evidence, but bears on the weight to be given his testimony." *Henson v. State*, 535 N.E. (2d) 1189, 1193 (Ind. 1989). We affirm.

6. Was the solicitor's closing argument on deterrence fundamentally unfair and did it inject an unreliable factor into the sentencing determination?

There was no objection to the solicitor's closing argument at trial. *State v. Pierce*, 263 S.C. 23, 207 S.E. (2d) 414 (1974). Thus, the objection is not preserved for appellate review. *State v. Hoffman*, 312 S.C. 386, 440 S.E. (2d) 869 (1994); *See also State v. Torrence*, 305 S.C. 45, 406 S.E. (2d) 315 (1991).

## Proportionality Review

Lastly, we have reviewed the entire record and conclude the death sentence was not the result of passion, prejudice or other arbitrary factors, and the evidence supports the jury's finding of the aggravating circumstance. S.C. Code Ann. § 16-3-25(C)(1)-(2) (1985). The death sentence is not excessive or disproportionate to the penalty imposed in similar cases. *See State v. Davis*, 309 S.C. 326, 422 S.E. (2d) 133 (1992), *cert. denied*, — U.S. —, 113 S.Ct. 2355, 124 L.Ed. (2d) 263 (1993); *State v. Green*, 301 S.C. 347, 392 S.E. (2d) 157 (1990), *cert. denied*, 498 U.S. 881, 111 S.Ct. 229, 112 L.Ed. (2d) 183; *State v. Middleton*, 295 S.C. 318, 368 S.E. (2d) 457 (1988), *cert. denied*, 488 U.S. 872, 109 S.Ct. 189, 102 L.Ed. (2d) 158.

For the reasons discussed above, Franklin's conviction and sentence are AFFIRMED.

CHANDLER, C.J., and MOORE and WALLER, JJ., concur.

FINNEY, J., dissenting in separate opinion.

FINNEY, Justice:

I respectfully dissent. In my opinion, the trial court's mishandling of the *Batson* issue, and the admission of photographs 40 and 90 in the sentencing phase require reversal.

After a jury was selected, each party made a *Batson* motion. A hearing was held, and the trial judge found both appellant and the State had exercised unconstitutional peremptory strikes. The names of all jurors called in the first selection proceeding were put back in the pool, and a new jury selection proceeding commenced. One of the individuals improperly stricken by appellant was juror Cantley. Juror Cantley was called a second time, and as before the State accepted him and appellant struck him. The trial judge interjected "I've already ruled," a bench conference was held, and juror Cantley was seated.

After the jury selection was complete, the judge put his ruling on the record:

> *I ruled at the side bar that he [defense attorney] did not have the right to again give me some race neutral reason.* My idea was that if he did not have a reason then he couldn't have a reason now and we had a discussion about it. (Emphasis added.)

Appellant was not permitted to proffer his reason for striking juror Cantley during the second proceeding.

In South Carolina, the remedy heretofore for a *Batson* violation has been to conduct a second jury selection proceeding *de novo*. *State v. Jones*, 293 S.C. 54, 358 S.E. (2d) 701 (1987). The majority overrules *Jones'* bright line remedy and substitutes for it the vague rule that the remedy for a *Batson* violation is vested in the trial judge's discretion. In my opinion, this new procedure is fraught with the potential for error and, at the least, will generate numerous appeals in which this Court will be required to define the parameters of the trial judge's discretion. I would adhere to *Jones*.

The majority holds this new rule permits the trial judge to remedy a *Batson* violation by seating the improperly stricken juror *on the jury from which he was stricken*. Whatever the

merits of such a new rule, that is *not* what the trial judge did in this case. I do not understand how this new remedy can be used to affirm this appeal.

*De novo* means to begin again "as if no proceeding whatsoever had been had in the first instance." *Nat'l Health Corp. v. DHEC*, 298 S.C. 373, 378, fn. 1, 380 S.E. (2d) 841, 844, fn. 1 (Ct. App. 1989). Here, the trial judge initially complied with *Jones* and began the jury selection process *de novo*. He then *sua sponte* deviated from *Jones* and held that appellant could not strike juror Cantley or any other juror he had been found to have unconstitutionally stricken in the first proceeding *regardless of the reason for the second strike*. This ruling was reversible error. First, it ignores the plain meaning of the term *de novo*. Second, it is entirely conceivable that, in the interval between the *Batson* hearing and the second jury selection proceeding, appellant learned a race-neutral fact about juror Cantley which caused appellant to peremptorily strike him. Alternatively, the composition of the jury being selected *de novo* may have been such that appellant chose to strike juror Cantley because all remaining uncalled jurors in this second proceeding had been equivocal during voir dire about capital punishment, and he preferred to have them rather than juror Cantley seated on his jury. *Compare State v. Davis*, 306 S.C. 246, 411 S.E. (2d) 220 (1991) (vacillating voir dire responses by prospective capital jurors are proper grounds for peremptorily strikes) *with State v. Grandy*, 306 S.C. 224, 411 S.E. (2d) 207 (1991) (where no explanation given why other venirepersons were more desirable than one struck, *Batson* violated).

The trial judge's ruling that no reason could support the striking of juror Cantley has deprived this Court of the ability to review whether appellant's statutory right to a jury of his choice was violated. The majority ignores this fatal defect by finding appellant "was not denied his peremptory challenge. Rather, he was simply prohibited from exercising it in a racially discriminatory manner." There is simply *no evidence* in the record that appellant struck juror Cantley for improper reasons during the *de novo* proceeding. The majority bolsters its unsupported finding by stating that appellant's counsel conceded that there was no independent reason for the second strike. This alleged concession is derived from *appellate coun-*

*sel's* (who was not trial counsel) statements at oral argument. In my opinion, nothing in those responses is a concession that the second strike was racially motivated.[1] I would reverse and remand this capital case for a new trial. *See State v. Briggs*, 27 S.C. 80, 2 S.E. 854 (1887) ("The right of challenge as allowed [by statute] is regarded sacred.").

Had this *Batson* error not required a new trial, I would nonetheless reverse and remand for resentencing. In my opinion, the prejudicial effect of the admission of photographs 40 and 90 so outweighed their probative value that reversal is mandated, especially since the effect of exhibit 90 was to suggest the victim had been sexually assaulted with the broomstick even though the pathologist was unable to conclude this was so.

## APPENDIX

JUSTICE 1: . . . Now what happens when Bradley Cantley is struck? Does defense counsel say, "I want to strike him because I struck him before and he is going to be tainted and he's going to hold it against me?" What happens at that point?

ATTORNEY: He objected and the trial court said, "Listen, I told you you can't strike him and that's it."

JUSTICE 1: . . . And then nothing else was put on the record, was it, Mr. Attorney?

ATTORNEY: . . . I believe that after all of the jury was selected I think there was some mention of it in the record. I would have to go back and look at my notes. I may be wrong.

\* \* \* \* \*

JUSTICE 1: But your understanding of the objection then by defense counsel is that it is purely an objection based on having struck him before. There isn't any other reason we don't know about for having struck him?

ATTORNEY: Well, no—no. There is no other reason we don't know of.

\* \* \* \* \*

JUSTICE 2: Was defense counsel afforded an opportunity to proffer any reason for striking juror Cantley?

---

[1] A transcript of the relevant colloquy is attached as an appendix to this dissent.

ATTORNEY: No, your Honor, he wasn't. I think the obvious reason in here is juror Cantley along with the other three jurors that were forced to be seated had previously been struck by him and he just didn't want them on the jury.

\*   \*   \*   \*   \*

JUSTICE 2: Was there any indication of an opportunity being afforded to articulate any basis that the second strike as to why juror Cantley would not be an acceptable juror to the defense?

ATTORNEY: The trial court wouldn't allow anything. He just said . . .

JUSTICE 2: What did the trial court say?

ATTORNEY: He just said, "I'm not going to allow you to do it for any reason."

JUSTICE 2: "I have previously ruled."

ATTORNEY: He said, "I have previously ruled." And, he said that "if you have done it for a racially discriminatory reason," then he said "you cannot strike that juror again when it come up." Then he said later, I think, he said, "you cannot do it for any reason."

JUSTICE 2: Under the trial court's ruling there had been a racially discriminatory reason at the first strike. That's not before us, right?

ATTORNEY: No, your Honor, it's not.

JUSTICE 2: And, when it comes up the second time, if something had developed, was counsel afforded an opportunity to give that reason? Say this juror had been observed talking to a police officer or any number of things that happen in the trial of cases, was he given an opportunity to give a reason?

ATTORNEY: No. And I think he had a right to give that reason.

JUSTICE 1: You yourself, however, concede that the reason the juror was struck is because he struck him before. You don't know of any other reason or anything in this record to suggest that defense counsel was prevented if he knew of some extraneous reason that cropped up between first selection and a half an hour later, the second selection, you don't know of any other reason that developed for that strike? Do you, Attorney?

ATTORNEY: No, your Honor, I don't.