**THE STATE OF SOUTH CAROLINA**
**In The Supreme Court**

The State, Respondent,

v.

Gabrielle Olivia Lashane Davis-Kocsis, Petitioner.

Appellate Case No. 2022-000850

―――――――――

**ON WRIT OF CERTIORARI TO THE COURT OF APPEALS**

―――――――――

Appeal from Berkeley County
Maite Murphy, Circuit Court Judge

―――――――――

Opinion No. 28213
Heard April 16, 2024 – Filed June 26, 2024

―――――――――

**AFFIRMED**

―――――――――

Jason Scott Luck, of Luck VI Ltd. Co., of Bennettsville, for Petitioner.

Attorney General Alan McCrory Wilson, Deputy Attorney General Donald J. Zelenka, Senior Assistant Deputy Attorney General Melody Jane Brown, and Assistant Attorney General Julianna E. Battenfield, of Columbia; and Solicitor Scarlett Anne Wilson, of Charleston, all for Respondent.

―――――――――

**JUSTICE FEW:** Gabrielle Davis-Kocsis was convicted of murder, two counts of kidnapping, first-degree burglary, and criminal conspiracy, all arising out of a confrontation between drug dealers. The court of appeals considered numerous issues and affirmed. We granted Davis-Kocsis's petition for a writ of certiorari to address two issues. The first is whether section 16-3-910 of the South Carolina Code (2015) prohibits sentencing a defendant for kidnapping and murder when the kidnapping and murder victims are different. The second is whether the trial court erred in admitting a recording of a 911 call over a Rule 403, SCRE objection. We affirm the court of appeals.

## I.      Facts and Procedural History

In 2015, Mark Connor—the murder victim—stole cash and a motorcycle from Davis-Kocsis. Davis-Kocsis—one of the drug dealers—offered seven grams of methamphetamine to anyone who could give her information about Connor's whereabouts. After learning Connor was staying at a drug house known as "Miss Rose's house," Davis-Kocsis, Matt Grainger, and three others went to the house and broke in.

Connor, Whitney Chance, Alexis Murray, and several others were staying at Miss Rose's house at the time of the burglary. According to the State, Davis-Kocsis sprayed bear mace throughout the house. She then began shouting at the occupants of the house, trying to locate Connor. One of the members of Davis-Kocsis's group held a gun to Murray's forehead while the others looked for Connor. Murray and Chance—the kidnapping victims—testified at trial they did not feel free to leave.

When the burglars found Connor, Grainger began fighting with him, and Grainger shot him. The burglars quickly fled the house after the shooting. Connor later died from the gunshot, and Grainger ultimately pled guilty to his murder. Davis-Kocsis was also charged with murder, along with two counts of kidnapping, first-degree burglary, and criminal conspiracy.

Before trial, Davis-Kocsis moved under Rule 403 to exclude a ten-minute recording of Murray's 911 call. In the recording, Murray explains what happened, begs for Connor not to die, and identifies Davis-Kocsis (by nickname) as being involved in the crime. The trial court did not listen to the recording but asked how long it was and what was on it. The parties then gave descriptions of what was on the recording.

Davis-Kocsis argued the call would "stir up the passions and prejudices of the jury . . . using emotion rather than facts." The State argued the recording should not be excluded because, "It actually gives [in] real time what is taking place in that moment in trying to give law enforcement the address, the description of the cars, trying to get the description of the assailants in real time." The trial court denied the motion, finding the recording was "intended for corroborative purposes and establishing the elements of the offense."

The State offered the 911 recording into evidence through its first witness. Davis-Kocsis renewed her Rule 403 objection, which the trial court overruled. The State played the 911 recording then and again during its closing argument, and the jury requested to listen to it during deliberations.

During closing argument, the State argued Davis-Kocsis was guilty of murder and kidnapping under "the hand of one is the hand of all" accomplice liability theory.[1] The jury found Davis-Kocsis guilty of all charges. The trial court sentenced her to

---

[1] Although "the hand of one is the hand of all" accomplice liability theory is not an issue before this Court, this case presents the classic factual scenario to illustrate how the theory works. Davis-Kocsis, Grainger, and the others in their group mutually agreed to burglarize Miss Rose's house to retrieve Davis-Kocsis's money, but there is no indication any of them initially intended to murder or kidnap anyone. Davis-Kocsis raised this issue to the court of appeals, arguing the State failed to prove she had the necessary criminal intent for kidnapping. *State v. Davis-Kocsis*, 436 S.C. 468, 486, 872 S.E.2d 415, 424 (Ct. App. 2022). As the court of appeals explained, however, "it does not matter if the defendant knows whether his codefendant is going to undertake a particular criminal act." *Id.* When the group mutually agreed to commit an armed home invasion against rival drug dealers, all members of the group became liable for any unplanned crimes that might naturally occur in the course of the burglary, such as murder or kidnapping. *See Butler v. State*, 435 S.C. 96, 97-98, 866 S.E.2d 347, 348 (2021) ("Under the theory the 'hand of one is the hand of all,' when two people join together to commit a crime, and during the commission of that crime one of the two commits another crime, both may be criminally liable for the unplanned crime if it was a natural and probable consequence of their common plan to commit the initial crime." (citing *State v. Harry*, 420 S.C. 290, 299, 803 S.E.2d 272, 276 (2017))). Under the law, therefore, all participants in the planned burglary may be convicted for murder and kidnapping.

concurrent terms of fifty years for murder, thirty years for each of the two counts of kidnapping, fifty years for first-degree burglary, and five years for criminal conspiracy.

The court of appeals affirmed. *State v. Davis-Kocsis*, 436 S.C. 468, 872 S.E.2d 415 (Ct. App. 2022). Davis-Kocsis filed a petition for a writ of certiorari raising two issues. We granted the petition.

## II.      Kidnapping Sentences

Davis-Kocsis argues the court of appeals erred in affirming her kidnapping sentences under section 16-3-910, which provides: "Whoever shall unlawfully . . . kidnap . . . any other person . . . is guilty of a felony and, upon conviction, must be imprisoned for a period not to exceed thirty years *unless sentenced for murder* as provided in Section 16-3-20." § 16-3-910 (emphasis added).

This Court has interpreted section 16-3-910 to prohibit a trial court from sentencing a defendant for kidnapping when he is also sentenced for murdering the same victim. *State v. Copeland*, 278 S.C. 572, 597, 300 S.E.2d 63, 77-78 (1982); *State v. Perry*, 278 S.C. 490, 495-96, 299 S.E.2d 324, 327 (1983); *Owens v. State*, 331 S.C. 582, 585, 503 S.E.2d 462, 464 (1998). The court of appeals held "the trial court properly sentenced Kocsis for the kidnappings of Murray and Chance because Kocsis was only sentenced for murdering [Connor]—not Murray and Chance—and thus, the prohibition found in section 16-3-910 does not apply." *Davis-Kocsis*, 436 S.C. at 489, 872 S.E.2d at 426. Davis-Kocsis argues section 16-3-910 "does not require the kidnapping victim and murder victim to be the same person" for the prohibition to apply, relying on companion cases *State v. Livingston*, 282 S.C. 1, 317 S.E.2d 129 (1984), and *State v. Stroman*, 281 S.C. 508, 316 S.E.2d 395 (1984). The State argues this Court decided the prohibition does not apply when the murder and kidnapping victims are different in *State v. Vazquez*, 364 S.C. 293, 613 S.E.2d 359 (2005), *abrogated on other grounds by State v. Evans*, 371 S.C. 27, 31, 637 S.E.2d 313, 315 (2006).

We agree with the State and stand by our holding in *Vazquez* that a defendant may be sentenced for both murder and kidnapping when there are different victims for each crime. *Vazquez*, 364 S.C. at 302, 613 S.E.2d at 363. We acknowledge that in *Livingston* and *Stroman* the defendants' kidnapping sentences were vacated, even though the sentences related to victims who were not murdered. However, no party

in those cases asked the Court to differentiate between the victims.  *Livingston*, 282 S.C. at 8, 317 S.E.2d at 133; *Stroman*, 281 S.C. at 514, 316 S.E.2d at 400.  In fact, in a brief filed jointly in *Livingston* and *Stroman*, the State conceded all of the kidnapping sentences should be vacated, not just the sentences related to the murder victims.  Thus, we hold *Vazquez* controls.  We overrule *Livingston* and *Stroman* to the extent they are inconsistent with *Vazquez*.

The State argues the sentencing issue is unpreserved because Davis-Kocsis did not object to the imposition of the kidnapping sentence at trial.  The court of appeals noted Davis-Kocsis "never specifically raised to the trial court that she could not be sentenced for the kidnappings of Murray and Chance in light of her murder sentence for [Connor], and thus, this argument would traditionally be unpreserved."  *Davis-Kocsis*, 436 S.C. at 488-89, 872 S.E.2d at 425 (emphasis omitted).  However, the court of appeals found an exception applied and reached the merits.  436 S.C. at 489, 872 S.E.2d at 426.  The State argues this was error.

Generally, a challenge to sentencing must be raised at trial or the issue will not be preserved for appellate review.  *State v. Garner*, 304 S.C. 220, 222, 403 S.E.2d 631, 632 (1991).  However, in *State v. Johnston*, 333 S.C. 459, 510 S.E.2d 423 (1999), this Court reached the merits of a sentencing ruling that was not objected to at trial due to "exceptional circumstances."  333 S.C. at 463, 510 S.E.2d at 425.  We explained that exceptional circumstances are present when (1) the State concedes the trial court erred by imposing an illegal sentence and (2) there is a real threat the defendant will remain incarcerated beyond his legal sentence.  333 S.C. at 463-64, 510 S.E.2d at 425.  *Johnston* controlled when the court of appeals decided this case and when the parties filed their briefs to this Court.

In *State v. Plumer*, 439 S.C. 346, 887 S.E.2d 134 (2023), however, we modified *Johnston* and held "that when a trial court imposes what the State concedes is an illegal sentence, the appellate court may correct that sentence on direct appeal or remand the issue to the trial court even if the defendant did not object to the sentence at trial and even if there is no real threat of incarceration beyond the limits of a legal sentence."  439 S.C. at 351, 887 S.E.2d at 137.  We did this because, "In such cases, it is inefficient and a waste of judicial resources to delay the inevitable by requiring the appellant to file a post-conviction relief action or petition for a writ of habeas corpus."  *Id*.

While we do reach the merits in this case, we reiterate that—going forward—the issue-preservation standard for illegal sentences is the standard set forth in *Plumer*.

### III.   911 Call

Davis-Kocsis also argues the trial court erred by admitting the recording of the 911 call because its probative value was substantially outweighed by the danger of unfair prejudice.  The court of appeals held there was no "manifest abuse of discretion" in admitting the recording.  *Davis-Kocsis*, 436 S.C. at 490, 872 S.E.2d at 426 (quoting *State v. Douglas*, 369 S.C. 424, 429, 632 S.E.2d 845, 848 (2006)).[2]  The court of appeals emphasized the recording had probative value in corroborating the witnesses' testimony because the defense attacked their credibility.[3]  *Id*.  The 911 call identifies Davis-Kocsis as one of the perpetrators of the crime.  The 911 call also contains a description of what happened shortly after the crime was committed, and Murray testified to the same general series of events she described on the recording.  The probative value of this corroboration is significant, considering Davis-Kocsis's defense relied heavily on discrediting the State's witnesses.

---

[2] Over the years, this Court and our court of appeals have used the phrase "manifest abuse of discretion" to describe our standard for reviewing a trial court's evidentiary rulings.  However, the word "manifest" has no meaning in this context and does not impact the standard.  Some courts have used the term "manifest error" to signify "An error by the trial court that has an identifiably negative impact on the trial to such a degree that the . . . rights of a party are compromised," or "An error that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record."  *Error*, BLACK'S LAW DICTIONARY (11th ed. 2019).  However, the term "manifest error" has no application in South Carolina.  Our standard of review is simply to determine whether the trial court acted within its discretion.  *See State v. Middleton*, 441 S.C. 55, 60, 893 S.E.2d 279, 281 (2023) (reviewing an evidentiary ruling to determine whether "the trial court acted within its discretion").  If so, we affirm; if not, we turn to whether the error caused prejudice, and if so, we reverse.

[3] In her opening statement, Davis-Kocsis explained that many of the witnesses used methamphetamine, which caused them to stay up for days and weeks at a time.  She suggested this undermined their credibility.

The danger of unfair prejudice is very low. Davis-Kocsis argues the recording is raw and emotional. There is no doubt the call is emotional as it captures the moments right after the crime where a friend of the caller is fighting for his life after being shot. However, the recording was not so provocative as to rise to the level of "unfair prejudice." It would be no surprise to the jury that someone at a crime scene watching her friend die would be emotional. There is nothing in the record that indicates the recording "create[d] a 'tendency to suggest a decision on an improper basis . . . .'" *State v. Jones*, 440 S.C. 214, 259, 891 S.E.2d 347, 371 (2023) (quoting *State v. Franklin*, 318 S.C. 47, 55, 456 S.E.2d 357, 361 (1995)).

Generally, "All relevant evidence is admissible." Rule 402, SCRE. Relevant evidence may be excluded, however, "if its probative value is substantially outweighed by the danger of unfair prejudice." Rule 403, SCRE.[4] The significant probative value of the recording was not substantially outweighed by the minimal danger of unfair prejudice, and the trial court did not err in admitting the recording over Davis-Kocsis's Rule 403 objection.

Davis-Kocsis makes two other arguments that the recording should have been excluded. First, she argues the trial court erred in admitting the 911 call for "corroborative purposes" because the State offered the recording during the testimony of its first witness. She argues that before any evidence has probative value in corroboration, the proponent must first present other evidence to corroborate. We disagree. The trial court has discretion to base an assessment of probative value on testimony or evidence that has not yet been presented but appears likely to be presented later. Thus, this argument has no merit.

Second, Davis-Kocsis argues the trial court's failure to listen to the 911 call before admitting it into evidence "represents an abuse of discretion." This argument is

---

[4] The trial court stated that "although [the recording] may be prejudicial, the probative value outweighs the prejudicial effects." This was a misstatement of the Rule 403 standard because it does not restrict the analysis to "unfair" prejudice. *See* Rule 403, SCRE ("Although relevant, evidence may be excluded if its probative value is *substantially outweighed* by the danger of *unfair* prejudice . . . ." (emphasis added)). For an appellate court to determine whether the trial court has acted within its discretion, it is important for the trial court to correctly state the point of evidence law at issue.

unpreserved.  Davis-Kocsis never objected to the admission of the recording on the basis that the trial judge did not listen to the recording.  *See State v. Dunbar*, 356 S.C. 138, 142, 587 S.E.2d 691, 693-94 (2003) ("In order for an issue to be preserved for appellate review, it must have been raised to and ruled upon by the trial judge. Issues not raised and ruled upon in the trial court will not be considered on appeal."). She also never urged the trial judge to listen to the call.  *Cf. State v. King*, 422 S.C. 47, 68, 810 S.E.2d 18, 29 (2017) (holding the trial court abused its discretion when it "adamantly refused" to listen to a recording before ruling on its admissibility).

While we believe it is generally the better practice for a trial court to listen to a recording or watch a video before ruling on a Rule 403 objection, it is not absolutely required in every case.  Here, the parties explained to the trial court what was on the recording, and no party specifically requested the court listen to it.  If a party feels it is necessary for the trial court to first listen to a recording before ruling, it should explain to the court why it needs to listen and why the parties' descriptions of what was on the recording are not sufficient.

**AFFIRMED.**

**BEATTY, C.J., KITTREDGE, JAMES, HILL, JJ., and Acting Justice Jerry D. Vinson, Jr., concur.**