## 19636

The STATE Respondent, v. Aubrey Lee FOSTER and James Hershel Foster, Appellants

(197 S. E. (2d) 280)

512

*Robert O. DuPre, Esq.,* of Anderson, *for Appellants,*

*Messrs. Daniel R. McLeod, Atty. Gen., Emmett H. Clair* and *Robert M. Ariail, Asst. Attys. Gen.,* of Columbia, and *W. H. Ballenger, Sol.,* of Walhalla, *for Respondent,*

June 8, 1973.

LITTLEJOHN, Justice:

On May 11, 1972, the defendants were tried and convicted by a jury of possessing burglary tools and of housebreaking.

Each was sentenced to ten years imprisonment. Both have appealed, alleging that they were not given a speedy trial and alleging that certain evidence was improperly admitted at the trial.

The offenses occurred on December 12, 1964. The defendants were apprehended and arrested in the act of committing the offenses; they were admitted to bond and were indicted at the May 1965 term of court in Anderson County. While they were on bond, they went to the State of Florida and were imprisoned there for other crimes. The State of South Carolina placed a detainer with the imprisoning authorities in Florida.

During their confinement in Florida, the defendants by letter dated February 11, 1971, demanded a speedy trial. This letter was answered by the office of the Attorney General of South Carolina, by a letter dated February 17, 1971, in substance advising the defendants that South Carolina had a policy "of either bringing you to trial within one hundred eighty (180) days of an appropriate request or removing the detainers in question." On June 9, 1971, the Governor of South Carolina sent an executive agreement to Florida for the return of the defendants. After some delay, they were returned to South Carolina and tried in May 1972.

The defendants, by appropriate motions, asked the court below to dismiss the charges on the ground that they were not provided with a speedy trial as guaranteed by both the Constitution of the United States and the Constitution of South Carolina. The lower court denied all motions. By exceptions, the same issue is now before this Court.

The constitutional right to speedy trial has been applied to the states in *Klopfer v. North Carolina,* 386 U. S. 213, 87 S. Ct. 988, 18 L. Ed. (2d) 1 (1967), and recognized by this Court in *Wheeler v. State,* 247 S. C. 393, 147 S. E. (2d) 627 (1966). Mr. Justice Powell, in *Barker v. Wingo,* 407 U. S. 514, 92 S. Ct. 2182, 33 L. Ed. (2d) 101 (1972), laid down the controlling considerations when dealing with

a defendant's right to speedy trial. It is our opinion that *Barker* is dispositive of the speedy trial issue.

In that case, the Court discussed the test to be applied:

"The approach we accept is a balancing test, in which the conduct of both the prosecution and the defendant are weighed.

\* \* \*

"A balancing test necessarily compels courts to approach speedy-trial cases on an *ad hoc* basis."

The Court, in *Barker,* recognizes that it can do little more than identify some of the factors which courts should use. They are:

(1) The length of delay is the triggering mechanism which requires inquiry into the other factors.

(2) The reason the government assigns to justify the delay.

(3) When and how the defendant asserted his right to speedy trial.

(4) Prejudice to the defendant.

*Barker* does not set forth a specific time which constitutes a "length of delay" that requires a complete inquiry into the other three factors, but states that it should be determined by the peculiar circumstances of the case. In the case before us, the delay involved suggests that we should inquire into the other three factors enumerated above.

Prior to having demanded a speedy trial on February 11, 1971, the defendants had written to the Attorney General in November, 1970, but did not give complete information relative to their cases. The Attorney General promptly requested additional information. It is apparent that neither the defendants nor the State pursued the matter until November of 1970, except for the filing of the detainer. The record does not reflect any active attempt by the State to delay the trials; instead the initial five and one-half (5½) year delay can be attributed to the State's inaction and the

one and one-half (1½) year delay subsequent to defendants' demand can be attributed to the State's administrative procedures in returning the defendants to South Carolina. The record offers no reason for the failure of the defendants to assert their right sooner, and under *Barker,* a failure to assert the right will make it difficult for the defendants to prove that they were denied a speedy trial.

We now consider whether the defendants have been prejudiced by the delay. One of the principal reasons for guaranteeing a speedy trial is that a defendant should not be required to defend a stale prosecution. There are, of course, other considerations less important. The record reflects that these two defendants, along with one other individual (now deceased) were apprehended and arrested on the roof of a store building in the nighttime. Holes had been bored in the roof. They had chisels, a big screwdriver, and several prizebars. They were taken to jail, where they remained until retained counsel arranged bond. At the trial, the State completely developed its case, but neither defendant testified or presented any witnesses. Four witnesses, three of whom were police officers who arrested the defendants, testified. In considering the effect of the delay on the actual trial, the record is simply void of even minimal prejudice.

The facts that the defendants did not request a trial for some five and one-half years and that the State has shown a lack of any prejudice to the defendants, outweigh any responsibility attributable to the State for not more rapidly initiating trial or for any delay due to the slowness of its administrative procedures.

The defendants next argue that the tools introduced in evidence at the trial were inadmissible because they were not properly preserved nor identified according to acceptable evidentiary rules. During the course of the trial, Deputy Sheriff Bracken testified that he found a number of tools on the roof of the store the night the defendants were arrested; that he tagged the tools; and that these tools

were in his possession from then until trial. He was vigorously cross-examined and throughout maintained that he was the complete chain of custody. He further identified the tools offered into evidence as the ones he had found on the roof and kept in his locker for the seven year period. The tools were properly connected with the defendants and the crime in question, and were thus admissible.

Affirmed.

Moss, C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.