649 S.E.2d 112

**STATE of South Carolina, Respondent,**

v.

**Jason Sinatra EDWARDS, Maceo Latonya Edwards, and Jonais Edwards, Appellants.**

No. 4261.

Court of Appeals of South Carolina.

Heard June 6, 2007.

Decided June 21, 2007.

Rehearing Denied Aug. 27, 2007.

---

544

546

548

Attorney General Henry D. McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Senior Assistant Attorney General W. Edgar Salter, all of Columbia; and Solicitor Cecil Kelly Jackson, of Sumter, for Respondent.

Steven Smith McKenzie, of Manning, for Appellants.

ANDERSON, J.

Jason, Maceo, and Jonais Edwards (collectively Defendants) appeal their criminal convictions, contending the trial court erred in 1) failing to follow the proper procedure for a *Batson*[1] challenge during jury selection; 2) denying Defendants' motion to dismiss the criminal charges because they were not granted a speedy trial; and 3) denying Defendants' motion to dismiss based on the State's violation of Rule 3, SCRCrimP. We affirm.

## *FACTUAL/PROCEDURAL BACKGROUND*

On October 11, 2004, the Williamsburg County Grand Jury indicted Jason and Maceo Edwards, each on two counts of murder and one count of possession of a weapon during a violent act. The Grand Jury indicted Jonais Edwards for accessory after the fact of murder. The charges stemmed from the June 19, 2002, murders of Joe Woods and Jimmy Robinson. Arrest warrants for Jonais and Maceo were issued on June 22, 2002, and for Jason on October 31, 2002. Each defendant filed a motion for a speedy trial.

Defendants were tried jointly before a jury in January of 2006. The trial court quashed the first jury and impaneled a second jury in response to the State's *Batson* motion. Jason Edwards[2] moved to dismiss the charges based on alleged

1. *Batson v. Kentucky*, 476 U.S. 79, 89, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

2. The record on appeal provides only Defendant Jason Edwards' Motion to Dismiss Criminal Charges. In the Brief on Appeal, Defendants' counsel addresses the issues in the Motion on behalf of all appellants. However, the record indicates Maceo and Jonais subsequently obtained separate counsel. Therefore, we only consider the Motion before us filed on behalf of Jason Edwards.

violations of his right to a speedy trial and Rule 3, SCRCrimP. The trial court denied the motion to dismiss.

The jury returned guilty verdicts on all counts. The trial court sentenced Jason to life imprisonment for the murders and five years, concurrent, for possession of a weapon during a violent crime. Maceo received thirty years for the murders and a concurrent five-year sentence for possession of a weapon during a violent crime. The trial court sentenced Jonais to fifteen years for his conviction on accessory after the fact, suspended upon service of seven years in prison, and five years probation. Defendants were credited with time served.

### *STANDARD OF REVIEW*

In criminal cases, the appellate court sits to review errors of law only. *State v. Baccus*, 367 S.C. 41, 625 S.E.2d 216 (2006); *State v. Wilson*, 345 S.C. 1, 545 S.E.2d 827 (2001); *State v. Wood*, 362 S.C. 520, 608 S.E.2d 435 (Ct.App.2004). We are bound by the trial court's factual findings unless they are clearly erroneous. *State v. Quattlebaum*, 338 S.C. 441, 527 S.E.2d 105 (2000); *State v. Williams*, 326 S.C. 130, 485 S.E.2d 99 (1997); *State v. Patterson*, 367 S.C. 219, 625 S.E.2d 239 (Ct.App.2006) *cert. pending; State v. Landis*, 362 S.C. 97, 606 S.E.2d 503 (Ct.App.2004). This Court does not re-evaluate the facts based on its own view of the preponderance of the evidence but simply determines whether the trial judge's ruling is supported by any evidence. Wilson, 345 S.C. at 1, 545 S.E.2d at 827; *State v. Mattison*, 352 S.C. 577, 575 S.E.2d 852 (Ct.App.2003).

On appeal, we are limited to determining whether the trial judge abused his discretion. *State v. Reed*, 332 S.C. 35, 503 S.E.2d 747 (1998); *State v. Douglas*, 367 S.C. 498, 626 S.E.2d 59 (Ct.App.2006) *cert. pending; State v. Walker*, 366 S.C. 643, 623 S.E.2d 122 (Ct.App.2005). An abuse of discretion occurs when the ruling is based on an error of law or a factual conclusion that is without evidentiary support. *Fields v. Regional Med. Ctr. Orangeburg*, 363 S.C. 19, 609 S.E.2d 506 (2005); *Renney v. Dobbs House, Inc.*, 275 S.C. 562, 274 S.E.2d 290 (1981); *see also Simon v. Flowers*, 231 S.C. 545, 550, 99 S.E.2d 391, 393–94 (1957) (" '[E]rror at law' exists: (1) when the circuit judge, in issuing [the order], was controlled by

some error of law ... or (2) where the order, based upon factual, as distinguished from legal, considerations, is without adequate evidentiary support."); *McSween v. Windham*, 77 S.C. 223, 226, 57 S.E. 847, 848 (1907) ("[T]he determination of the court will not be interfered with, unless there is an abuse of discretion, or unless the exercise of discretion was controlled by some error of law.").

In determining whether a party exercised strikes in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the appellate court must examine the totality of the facts and circumstances in the record surrounding the strikes. *State v. Shuler*, 344 S.C. 604, 545 S.E.2d 805 (2001). The trial judge's findings regarding purposeful discrimination in the exercise of peremptory strikes rest largely on evaluation of demeanor and credibility. *Southerland v. State*, 337 S.C. 610, 524 S.E.2d 833 (1999); *State v. Tucker*, 334 S.C. 1, 512 S.E.2d 99 (1999). Often the demeanor of the challenged attorney will be the best and only evidence of discrimination. *Hernandez v. New York*, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991); *Shuler*, 344 S.C. at 615–16, 545 S.E.2d at 810. Furthermore, a strike must be examined in light of the circumstances under which it is exercised, including an examination of the explanations offered for other strikes. *Id.* at 616, 545 S.E.2d at 810–11.

The judge's findings as to purposeful discrimination are entitled to great deference and will be set aside on appeal only if clearly erroneous. *State v. Haigler*, 334 S.C. 623, 515 S.E.2d 88 (1999); *State v. Adams*, 322 S.C. 114, 470 S.E.2d 366 (1996). The body of law extant in regard to rulings made by a trial judge in a *Batson* hearing reveals luculently that the appellate court must give deferential treatment to the trial judge on review. *State v. Cochran*, 369 S.C. 308, 326, 631 S.E.2d 294, 304 (Ct.App.2006) Anderson, J. concurring in result only.

## *LAW/ANALYSIS*

### I. *Batson v. Kentucky*

Defendants assert the trial court erred by quashing the first jury panel following a *Batson* hearing. Specifically, Defen-

dants contend the trial court's handling of the *Batson* hearing effectively placed the burden on Defendants to prove the absence of purposeful discrimination after they had articulated racially neutral explanations for their strikes. We disagree.

In *Batson v. Kentucky,* 476 U.S. 79, 89, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court, through the Equal Protection clause, forbade prosecutors from using peremptory challenges to strike jurors because of their race. The purposes of *Batson v. Kentucky* and its progeny are to protect a defendant's right to a fair trial by a jury of his peers, protect each venireperson's right not to be excluded from jury service for discriminatory reasons, and preserve public confidence in the fairness of the justice system by seeking to eradicate discrimination in the jury selection process. *State v. Haigler,* 334 S.C. 623, 515 S.E.2d 88 (1999); *State v. Flynn,* 368 S.C. 83, 627 S.E.2d 763 (Ct.App.2006). It is unconstitutional to strike a juror on the basis of race or gender. *See J.E.B. v. Alabama,* 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994). The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits the striking of a venireperson on the basis of race. *State v. Shuler,* 344 S.C. 604, 545 S.E.2d 805 (2001); *Haigler,* 334 S.C. at 628, 515 S.E.2d at 90. "Purposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure." *Batson,* 476 U.S. at 86, 106 S.Ct. 1712. A criminal defendant may object to race-based peremptory challenges on equal protection grounds regardless of whether the defendant and potential juror share the same race. *Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); *Payton v. Kearse,* 329 S.C. 51, 495 S.E.2d 205 (1998). Both the State and defendants are prohibited from discriminatorily exercising a peremptory challenge of a prospective juror. *Georgia v. McCollum,* 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992).

A hearing held pursuant to *Batson v. Kentucky* is trifurcated. In *State v. Rayfield,* 369 S.C. 106, 631 S.E.2d 244 (2006) our supreme court reiterated the proper procedure for conducting a *Batson* hearing originally set forth in *State v.*

*Adams,* 322 S.C. 114, 470 S.E.2d 366 (1996) [3] (citing *Purkett v. Elem,* 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995)). First, when one party strikes a member of a cognizable racial group, the circuit court must hold a *Batson* hearing if the opposing party requests one. *Shuler,* 344 S.C. at 615, 545 S.E.2d at 810; *Haigler,* 334 S.C. at 629, 515 S.E.2d at 90. In order to raise and preserve a *Batson* issue, the opposing party must move for the hearing after the jury is selected but before it is sworn. *State v. Jones,* 293 S.C. 54, 358 S.E.2d 701 (1987). This hearing must be held out of the presence of the jury panel and the jury venire. *Id.* Second, the proponent of the strike, to successfully rebut the presumption of a *Batson* violation, must then offer a facially race-neutral explanation for the strike. *Haigler,* 334 S.C. at 629, 515 S.E.2d at 90–91. Third, the opponent of the strike must show that the race-neutral explanation given was mere pretext. *Id.* at 629, 515 S.E.2d at 91; *Adams,* 322 S.C. at 124, 470 S.E.2d at 372.

## A. The Strike & *Batson* Request

The trial judge must hold a *Batson* hearing when members of a cognizable racial group are struck and the opposing party requests a hearing. *State v. Tucker,* 334 S.C. 1, 512 S.E.2d 99 (1999); *Jones,* 293 S.C. at 54, 358 S.E.2d at 701. Any person, regardless of race, may set forth a *Batson* claim. *State v. Chapman,* 317 S.C. 302, 454 S.E.2d 317 (1995). Both the defendant and the State can make a *Batson* motion. *See State v. Hicks,* 330 S.C. 207, 499 S.E.2d 209 (1998).

*Batson* requires a hearing to allow a party the opportunity to make a prima facie showing of purposeful discrimination by challenging the other party's use of a peremptory strike, and if such discrimination is found, the proponent of

---

**3.** In *State v. Adams,* 322 S.C. 114, 470 S.E.2d 366 (1996), the Court adopted the *Batson* procedure set forth in *Purkett v. Elem,* 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995), described herein. In doing so, the following cases cited, to the extent their holdings are inconsistent with this procedure, have been abrogated by *Adams: State v. Chapman,* 317 S.C. 302, 454 S.E.2d 317 (1995); *State v. Dyar,* 317 S.C. 77, 452 S.E.2d 603 (1994); *State v. Green,* 306 S.C. 94, 409 S.E.2d 785 (1991); *State v. Tomlin,* 299 S.C. 294, 384 S.E.2d 707 (1989); *State v. Jones,* 293 S.C. 54, 358 S.E.2d 701 (1987).

the strike has the opportunity to present a neutral explanation for the strike. *Jones*, 293 S.C. at 56–57, 358 S.E.2d at 702–03.

## B. Explanation for the Strike

The proponent of the strike must offer a facially race-neutral explanation for the strike. *Haigler*, 334 S.C. at 629, 515 S.E.2d at 90; *Adams*, 322 S.C. at 124, 470 S.E.2d at 372; *State v. Smalls*, 336 S.C. 301, 519 S.E.2d 793 (Ct.App. 1999). The explanation need not be clear, reasonably specific, or legitimate; it only needs to be race-neutral. *State v. Easler*, 322 S.C. 333, 471 S.E.2d 745 (Ct.App.1996), *aff'd as modified*, 327 S.C. 121, 489 S.E.2d 617 (1997). The reason is not required to be persuasive or plausible and may even be silly or superstitious. *Purkett*, 514 U.S. at 765, 115 S.Ct. 1769 (1995); *State v. Casey*, 325 S.C. 447, 481 S.E.2d 169 (Ct.App. 1997). While merely denying a discriminatory motive is insufficient, the proponent of the strike need only present race-neutral reasons. *Id.* at 451–52, 481 S.E.2d at 171–72. At this stage of the inquiry, the issue is the facial validity of the explanation.

> The second step of this process does not demand an explanation that is persuasive, or even plausible.... It is not until the third step that the persuasiveness of the justification becomes relevant-the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination. At that stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination. But to say that a trial judge may choose to disbelieve a silly or superstitious reason at step 3 is quite different from saying that a trial judge must terminate the inquiry at step 2 when the race-neutral reason is silly or superstitious. The latter violates the principle that the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.

*Adams*, 322 S.C. at 123–24, 470 S.E.2d at 371–72. Unless a discriminatory intent is inherent in the proponent's explanation, the reason offered will be deemed race-neutral. *Tucker*, 334 S.C. at 8, 512 S.E.2d at 102; *Payton*, 329 S.C. at 51, 495 S.E.2d at 205.

South Carolina rejected the dual motivation doctrine in the *Batson* context. *Payton,* 329 S.C. at 59–60, 495 S.E.2d at 210. We adopted the "tainted" approach whereby a discriminatory explanation for the exercise of a peremptory challenge will vitiate other nondiscriminatory explanations for the strike. *Id.*

### i. Examples–Valid Reasons for Strike

1. Demeanor can be considered a racially neutral explanation. Counsel may strike venirepersons based on their demeanor and disposition. *See Matthews v. Evatt,* 105 F.3d 907 (4th Cir.1997) (holding the State is allowed to consider tone, demeanor, facial expression, and any other race-neutral factors when striking jurors); *State v. Wilder,* 306 S.C. 535, 413 S.E.2d 323 (1991) (two black males struck because they were late); *State v. Wright,* 304 S.C. 529, 405 S.E.2d 825 (1991) (struck juror had disinterested attitude and demeanor); *Smalls,* 336 S.C. at 309, 519 S.E.2d at 797 (finding no discriminatory intent inherent in defense counsel's explanation for striking jurors who appeared to counsel as "looking in a 'mean,' 'stern' or 'accusatory' manner"); *State v. Guess,* 318 S.C. 269, 457 S.E.2d 6 (Ct.App.1995) (declaring solicitor could strike venireperson because of demeanor observed during qualification; juror appeared to be "slow").

2. Recipient of prior strike. *See Sumpter v. State,* 312 S.C. 221, 223, 439 S.E.2d 842, 844 (1994) ("we find the solicitor's additional explanation that he struck Mr. Wright because he had struck him earlier in the week is also race neutral").

3. Prior jury service. Recent prior jury service is a facially neutral reason for exercising a peremptory strike. *Casey,* 325 S.C. at 453, 481 S.E.2d at 172.

4. Prior criminal conviction. A prior criminal conviction is a neutral reason to strike. *Casey,* 325 S.C. at 453 n. 2, 481 S.E.2d at 172 n. 2; *see also Sumpter,* 312 S.C. at 223–24, 439 S.E.2d at 844 (ruling solicitor's explanation for striking a black venireperson was racially neutral where prospective juror had a prior DUI involvement).

5. Possible criminal record. *State v. Martinez,* 294 S.C. 72, 362 S.E.2d 641 (1987).

6. Prior prosecution by that particular Solicitor's office. *State v. Dyar,* 317 S.C. 77, 452 S.E.2d 603 (1994); *Sumpter,* 312 S.C. at 223–24, 439 S.E.2d at 844.

7. Acquaintance with the trial judge. *See State v. Adams,* 322 S.C. 114, 470 S.E.2d 366 (1996) (noting a potential juror's acquaintance with the trial judge is a valid reason for exercising a peremptory strike).

8. Relationship with attorney. An attorney's personal knowledge of and relationship with a prospective juror is a race-neutral reason for exercising a peremptory strike. *State v. Ford,* 334 S.C. 59, 512 S.E.2d 500 (1999).

9. Relationship with law enforcement or pro-law enforcement attitude. A potential juror's relationship with a law enforcement official, or a potential juror's pro-law enforcement attitude, is a race-neutral reason for exercising a peremptory strike. *Ford,* 334 S.C. at 65, 512 S.E.2d at 504; *cf. State v. Richburg,* 304 S.C. 162, 403 S.E.2d 315 (1991) (noting State's explanation that juror was anti-law enforcement was race-neutral).

10. Knowledge of and association with defendant. *State v. Johnson,* 302 S.C. 243, 395 S.E.2d 167 (1990).

11. Unemployment is a race-neutral reason for a strike. *State v. Green,* 306 S.C. 94, 409 S.E.2d 785 (1991).

12. Place or type of employment. It is legitimate to strike potential jurors because of their employment. *Ford,* 334 S.C. at 65, 512 S.E.2d at 504; *see also Adams,* 322 S.C. at 125, 470 S.E.2d at 372 (finding potential juror's employment as a court reporter is a valid reason for exercising a peremptory strike).

13. "General instability." *See State v. Robinson,* 305 S.C. 469, 409 S.E.2d 404 (1991) (indicating that Solicitor's reasons for striking black juror were racially neutral and were not pretext for discrimination where Solicitor stated he struck juror because of her "general instability," in that she had changed employment several times after relatively short periods of employment, was unmarried mother of two-year-old, and was still living at her parents' home, and juror admitted

on voir dire that she had seen outspoken advocate of defendant discussing his case on television).

## ii. Examples–Invalid Reasons for Strike

1. Desire to seat other venirepersons who have not yet been presented. *See State v. Hicks,* 330 S.C. 207, 499 S.E.2d 209 (1998) (stating black murder defendant who exercised nine of his peremptory strikes to remove white prospective jurors and one peremptory strike to remove black prospective juror from panel failed to satisfy requirement of *Batson* that he offer race-neutral explanation for his exercise of strikes against two of those white prospective jurors; defendant explained he struck those jurors "to reach some jurors further down the list," but he offered no explanation as to which jurors he was attempting to seat or why other jurors were more desirable than the two in question); *State v. Grandy,* 306 S.C. 224, 411 S.E.2d 207 (1991) (emphasizing that solicitor failed to articulate racially neutral explanation in his assertion he excluded prospective black juror because he wanted to seat other venirepersons; solicitor gave no reason why it was desirable to have other venirepersons seated, as opposed to the black juror; effect was same as if no reason was given for striking black juror).

2. Generalization about an entire group. *See Payton v. Kearse,* 329 S.C. 51, 495 S.E.2d 205 (1998) (ruling that striking white juror because she was a "redneck" was not valid race-neutral reason on its face; thus, strike was facially discriminatory and violated *Batson;* term "redneck" was racially derogatory term applied exclusively to members of white race, and term stereotyped subgroup of white race without any evidence that each member of group was actually possessed of bias or prejudice).

3. Potential juror who "shucked and jived" to the microphone. *See State v. Tomlin,* 299 S.C. 294, 299, 384 S.E.2d 707, 710 (1989) ("The trial court failed to inquire into or comment on the prosecutor's explanation that the juror was struck because he 'shucked and jived.' The use of this racial stereotype is evidence of the prosecutor's subjective intent to discriminate and clearly violates the mandates of *Batson.*").

4. Racial stereotypes. *See Tomlin,* 299 S.C. at 298–99, 384 S.E.2d at 710 (noting prosecutor stated he struck juror, a forty-three-year-old black woman, because she walked slow, talked low, and might not be able to withstand trial; rather than inquiring into legitimacy of this explanation, trial court suggested juror had lack of education, was extremely sluggish, and would be a "filler" if seated on the jury; supreme court concluded use of such racial stereotypes violates *Batson*).

### 3. Argument of Mere Pretext

Once a race-neutral explanation is given, the opponent of the strike must show the explanation was mere pretext to engage in purposeful racial discrimination. *State v. Short,* 333 S.C. 473, 511 S.E.2d 358 (1999); *Adams,* 322 S.C. at 124, 470 S.E.2d at 372. Pretext generally will be established by demonstrating that a similarly situated member of another race was seated on the jury. *State v. Haigler,* 334 S.C. 623, 515 S.E.2d 88 (1999); *Adams,* 322 S.C. at 123, 470 S.E.2d at 371. Under some circumstances, the race-neutral explanation given by the proponent may be so fundamentally implausible that the judge may determine, at this third step of the analysis, that the explanation was mere pretext even without a showing of disparate treatment. *Payton,* 329 S.C. at 55, 495 S.E.2d at 208.

The uneven application of a neutral reason does not automatically result in a finding of invidious discrimination if the strike's proponent provides a race-neutral explanation for the inconsistency. *See State v. Kelley,* 319 S.C. 173, 460 S.E.2d 368 (1995) (finding State provided a racially neutral explanation for why Solicitor did not strike juror with similar characteristics to one previously stricken). Under this prong, persuasiveness of the justification becomes relevant. *Purkett v. Elem,* 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995). The opponent of the strike carries the burden of persuading the circuit court the challenged party exercised strikes in a discriminatory manner. *State v. Adams,* 322 S.C. 114, 470 S.E.2d 366 (1996); *see also Haigler,* 334 S.C. at 629, 515 S.E.2d at 91 (stating burden of persuading court a *Batson* violation has occurred remains at all times on opponent of strike); *State v. Smalls,* 336 S.C. 301, 308, 519 S.E.2d 793, 796 (Ct.App.1999) ("At this third step, the burden returns to the

party challenging the strike to establish that the explanation is mere pretext."). The ultimate question the trial court resolves under this prong is whether the movant has met his burden in demonstrating purposeful discrimination. *State v. Casey*, 325 S.C. 447, 481 S.E.2d 169 (Ct.App.1997)

A racially neutral reason can be negated by showing that the party created a pretext for purposeful discrimination by applying his allegedly racially neutral standard in a discriminatory manner. *State v. Easler*, 322 S.C. 333, 471 S.E.2d 745 (Ct.App.1996), *aff'd as modified*, 327 S.C. 121, 489 S.E.2d 617 (1997). In *State v. Oglesby*, 298 S.C. 279, 379 S.E.2d 891 (1989), our supreme court found a *Batson* violation when the State struck three black women because they were patients of a doctor who was a defense witness, but seated a white woman who was a patient of the same doctor. The court held the State's race-neutral reason for striking the three black women was mere pretext in light of the fact that it seated a similarly situated white woman. *Id.* Similarly, in *Easler*, the court of appeals found a *Batson* violation when the defendant struck a black man because of his age, but seated a white man within the same age bracket. 322 S.C. at 348, 471 S.E.2d at 754. This court held the defendant's race-neutral reason for striking the black man was negated by the fact he seated several white venirepersons in the same age bracket. *Id.*

The determination of whether the minimum quantum of evidence has been produced under this prong is flexible, for the trial court's ruling turns on an examination of the totality of the facts and circumstances in the record, including the credibility and demeanor of the strike's proponent, and the plausibility of a neutral, but otherwise unpersuasive, reason. *Casey*, 325 S.C. at 452, 481 S.E.2d at 172.

In deciding whether the opponent of a strike has carried the burden of persuasion, a court must undertake a sensitive inquiry into the circumstantial and direct evidence of intent. *Haigler*, 334 S.C. at 629, 515 S.E.2d at 91. A strike must be examined in light of the circumstances under which it is exercised, including an examination of the explanations offered for other strikes. *Id.*

### 4. After *Batson* Motion is Granted

If the trial judge finds the opposing party has established a prima facie case of purposeful discrimination and that the proponent of the strike has failed to give race-neutral reasons for the contested strikes, the process of selecting a jury shall start over. *See State v. Jones,* 293 S.C. 54, 358 S.E.2d 701 (1987). Thus, if the trial court finds "a juror has been struck in violation of *Batson,* our supreme court has mandated that the circuit court strike the entire jury and begin the jury selection process de novo." *State v. Heyward,* 357 S.C. 577, 580–81, 594 S.E.2d 168, 169 (Ct.App.2004). The quashed jury will then reenter the jury venire, and jury selection will begin anew from the jury venire. *Jones,* 293 S.C. at 58 n. 3, 358 S.E.2d at 704 n. 3.

Once a juror has been unconstitutionally struck, the jury selection process relative to that juror is tainted. *State v. Lewis,* 363 S.C. 37, 609 S.E.2d 515 (2005). If the trial court chooses to reseat the improperly struck juror, the striking party may not use a peremptory strike to remove that juror from the panel a second time. *Id.* Therefore, during the subsequent jury selection, the trial judge may prohibit the party who violated *Batson* from striking a juror who was improperly struck during the previous jury selection. *Id.; State v. Franklin,* 318 S.C. 47, 456 S.E.2d 357 (1995).

### 5. The Factual Record

Initially, we dispose of a procedural matter raised by Defendants. The trial court heard the parties' *Batson* motions with only ten jurors seated on the panel. Prior to ruling on the *Batson* motions, the trial court sought the addition of twenty-five potential jurors to the venire, because the number of available individuals had been exhausted. Defendants maintain the trial court should not have heard the *Batson* motions because a full jury had not been seated. However, Defendants did not preserve this contention with a contemporaneous objection. It is well settled that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial court to be preserved. *Pye v. Estate of Fox,* 369 S.C. 555, 633 S.E.2d 505 (2006). Moreover, Defendants proffered and argued their own *Batson* motion,

apparently acquiescing to the procedure, despite the deficit in the number of jurors. A party cannot argue one theory at trial and a different theory on appeal. *State v. Bailey*, 298 S.C. 1, 5, 377 S.E.2d 581, 584 (1989). On the merits, Defendants rely on procedure set forth in *State v. Jones* to invalidate the trial court's conduct of the *Batson* hearing. 293 S.C. 54, 58, 358 S.E.2d 701, 704 (1987) ("In order to raise and preserve a *Batson* issue, the defendant must move for a hearing after the jury is selected but before it is sworn."). We determine the gravamen of the *Jones* holding is the preservation of a *Batson* issue before the jury is sworn. In that regard, the trial court followed the proper procedure in conducting the *Batson* hearing.

The State asserted Defendants exercised nine of their sixteen peremptory challenges to strike white veniremen in violation of *Batson v. Kentucky*. The trial court found the State identified a racially cognizable group and the burden shifted to Defendants to provide racially neutral justifications for striking the nine potential jurors.

Defendants explained two of the challenged veniremen had possible connections with another lawsuit in which defense counsel was involved. They struck four other jurors on the basis of relationship, personal knowledge, demeanor, or recent criminal victimization.

Defendants challenged 1) juror 19 because he was self-employed and defense counsel was concerned about self-employed individuals being able to sit and fairly adjudicate a case; 2) juror 50 because he was a newspaper editor and might have knowledge about the case as a newspaper editor or might be writing a story about the case; and 3) juror 131 because she worked for the Department of Motor Vehicles and had interaction with law enforcement. It was defense counsel's policy to strike all State government employees.

The State declared Defendants' reasons for striking jurors 19, 50, and 131 were mere pretext, averring that 1) juror 39 was, like juror 19, self-employed, but was, nevertheless, seated on the jury; 2) no evidence existed that juror 50 "either wrote an opinion with regard to this case, a story related to this case, or is in any way familiar with the facts of the case"; and

3) the "notion of striking every SCDOT employee" was "simply a pretextual reason for striking" juror 131.

In its *Batson* motion, the defense claimed four of the State's five strikes were from a racially cognizable group. The trial court agreed and instructed the State to present racially neutral justifications. The State offered the following reasons for the disputed strikes: 1) juror 22 lived with a cousin of a defendant; 2) juror 64 knew the parents of a defendant; 3) juror 123 had been arrested multiple times; and 4) juror 111 told the court he was related to one of the victims.

Defendants disputed the State's reasons as pretextual, complaining: 1) "I would like to know how they know number 22 lived with the Defendants' cousin?"; 2) "number 64 did not say he knew anybody and was related or could not be fair and impartial, but he went to high school with [counsel for State]"; 3) number 123's arrest record was not a conviction and "I'd like to see the rap sheet."; and 4) number 111 is "related to one of the dead guys in this case ... I can't imagine a better juror for them."

The trial court held:

The court has considered the strikes made by the Defense, and with regard, and I'll put the reasons on the record later on, but with regard to the strikes made by the Defendant the court finds that the Defendant has given an [sic] racially neutral explanation for striking jurors number [140, 16, 3, 139, 28, 106]. However, I find that the explanation given for striking jurors number 19, 50, and 131 are not racially neutral and for that reason the entire jury panel will be struck, and the jury will be selected again, and the Defense will not be allowed to strike jurors number 19, 50, and 131. With regard to the Defense motion regarding the State's strikes, that being jurors number 22, 64, 123, and 111, I find that the State has given a racially neutral explanation and am denying the Defense motion for striking the jury panel on the basis of *Batson*. Let me give just a little bit about my thinking and the reasons for these ruling [sic] because they somewhat overlap. In my view, personal acquaintance with a juror by the party striking that juror, and knowing how that party thinks and behaves is a legitimate reason, and that was the reason that I am allowing the strike of

number 16, because Defense had personal knowledge of that individual. Number 3, personal knowledge of Ms. [ ], ... one hundred six, ... the same reason I am allowing the strikes by the state of number 64 and 111. Both of them with personal knowledge ... So I think that's [sic] there is personal knowledge that somebody—not only personal knowledge, personal acquaintance with, and knowing how that person thinks is a legitimate reason.

(jurors' names redacted).

Adhering to the trifurcated *Batson* procedure, the trial court found Defendants peremptorily challenged members of a racially cognizable group, and, upon the motion of counsel, conducted a hearing outside the jury's presence. The court required Defendants to proffer racially neutral explanations for the preemptory strikes. After Defendants' explanations, the State argued Defendants' reasons for striking jurors 19, 50, and 131 were mere pretext for engaging in racial discriminatory exclusions. The trial court granted the State's *Batson* motion, finding the State established a prima facie case of purposeful discrimination and Defendants failed to give race-neutral reasons for the contested strikes.

While the trial court did not specifically articulate reasoning for finding Defendants' explanations were not racially neutral, the record contains sufficient justification to conclude there was no abuse of discretion. Defendants struck white juror 19 because he was self-employed and the defense did not want self-employed persons on the jury. However, Defendants seated juror 39, a black woman who, like juror 19, was self-employed. *See State v. Oglesby,* 298 S.C. 279, 379 S.E.2d 891 (1989) (race-neutral reason for striking the three black women was mere pretext in light of the fact that similarly situated white woman was seated). Juror 50 was challenged because he was a newspaper editor and might be writing a story about the crime or might know something about the case as a newspaper editor. Although juror 50's employment qualified as racially neutral, the speculation that he might be impartial because of familiarity with the case was inconsistent with his failure to respond to questioning about familiarity with the case on voir dire. *See Payton v. Kearse,* 329 S.C. 51, 495 S.E.2d 205 (1998) (a discriminatory explana-

tion for the exercise of a peremptory challenge will vitiate other nondiscriminatory explanations for the strike). Defendants struck juror 131, a state employee with the SCDOT, maintaining she had contact with law enforcement and it was their practice to strike all State employees. This generalization about an entire group, without any evidence that every employee of SCDOT is actually biased, is prejudiced, or has a relationship with law enforcement or a pro-law enforcement attitude, was not a valid reason for striking juror 131. *See Payton v. Kearse*, 329 S.C. 51, 495 S.E.2d 205 (1998) (strike because juror was member of generalized group without any evidence that each member of group was actually possessed of bias or prejudice not valid race-neutral reason); *State v. Ford*, 334 S.C. 59, 512 S.E.2d 500 (1999).

Following our supreme court's mandate in *State v. Heyward*, the trial court quashed the entire jury panel, returned the jurors names to the jury venire, and began the jury selection process anew. 357 S.C. 577, 580–81, 594 S.E.2d 168, 169 (Ct.App.2004); *State v. Jones*, 293 S.C. 54, 358 S.E.2d 701 (1987). In addition, the trial court prohibited Defendants, who violated *Batson*, from striking any juror during the subsequent jury selection who was improperly challenged during the previous jury selection. *See State v. Lewis*, 363 S.C. 37, 609 S.E.2d 515 (2005); *State v. Franklin*, 318 S.C. 47, 456 S.E.2d 357 (1995). Subsequently, jurors 50 and 131 were seated on the jury chosen to hear the case.

 We hold the trial court properly followed the *Batson* protocol established in *State v. Adams* and reiterated in *State v. Rayfield*, thereby ensuring that ultimately the State, as opponent of the disputed strikes, carried the burden of persuading the court Defendants exercised the strikes in a discriminatory manner.

## II. Speedy Trial

Defendant Jason Edwards argues his right to a speedy trial was violated under the United States and South Carolina constitutions and, therefore, the trial court erred in failing to dismiss the criminal charges against him. We disagree.

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI.

"Any person charged with an offense shall enjoy the right to a speedy and public trial by an impartial jury." S.C. Const. art. I, 14.

The Sixth Amendment of the United States Constitution, as applied to the states through the Fourteenth Amendment, and the South Carolina Constitution guarantee an accused the right to a speedy trial. *State v. Kennedy,* 339 S.C. 243, 528 S.E.2d 700, (Ct.App.2000), *aff'd* 348 S.C. 32, 558 S.E.2d 527 (2002); *State v. Brazell,* 325 S.C. 65, 480 S.E.2d 64, (1997); *State v. Chapman,* 289 S.C. 42, 344 S.E.2d 611 (1986). "The right to a speedy trial is not a theoretical or abstract right but one rooted in hard reality in the need to have charges promptly exposed." *Dickey v. Florida,* 398 U.S. 30, 37, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970). The determination of whether or not an accused has been denied his constitutional right to a speedy trial depends on the circumstances of each case. *Brazell,* 325 S.C. at 75, 480 S.E.2d at 70; *State v. Monroe,* 262 S.C. 346, 204 S.E.2d 433 (1974). "A speedy trial does not mean an immediate one . . . it simply means a trial without unreasonable and unnecessary delay." *State v. Dukes,* 256 S.C. 218, 222, 182 S.E.2d 286, 288 (1971).

In *Barker v. Wingo,* 407 U.S. 514, 521, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the United States Supreme Court observed that the right to a speedy trial is a vague concept, making it difficult to pinpoint the moment a defendant is denied the right. Therefore, the Court identified four factors to be used in determining whether a defendant has been denied the right to a speedy trial: 1) the length of the delay; 2) the reason the State asserts to justify the delay; 3) when and how the defendant asserted his right to a speedy trial; and 4) prejudice to the defendant. *Id.* at 530–32, 92 S.Ct. 2182; *see also Brazell,* 325 S.C. at 75, 480 S.E.2d at 70; *State v. Foster,* 260 S.C. 511, 514, 197 S.E.2d 280, 281 (1973). Courts must engage in a balancing test with these "related factors," which "must be considered together with such other circumstances as may be relevant." *Barker,* 407 U.S. at 533, 92 S.Ct. 2182. South Carolina has recognized these factors and adopted this balancing approach to the speedy trial analysis. *Brazell,* 325 S.C. at 75, 480 S.E.2d at 70; *Chapman,* 289 S.C. at 44, 344 S.E.2d at 612.

The first factor, length of delay, acts as a threshold requirement. *Barker*, 407 U.S. at 530, 92 S.Ct. 2182. Until there is some delay which is presumptively prejudicial, it is not necessary to inquire into the other factors. *Id. See Foster*, 260 S.C. at 514, 197 S.E.2d at 281(explaining that the length of delay is merely a triggering mechanism which brings additional factors into consideration); *State v. Tyson*, 283 S.C. 375, 323 S.E.2d 770 (1984) (affirming a trial judge's denial of a speedy trial motion where there was no detriment other than the incarceration); *Brazell*, 325 S.C. at 73, 480 S.E.2d at 69 (holding there was no violation of the right to a speedy trial where lack of prejudice negated the long delay and, in the context of pre-indictment delay, the defendant has the burden to show the delay caused substantial actual prejudice to his right to a fair trial).

A person's right to a speedy trial arises when he becomes the accused. *Id.*, at 75, 480 S.E.2d at 70 citing *United States v. MacDonald*, 456 U.S. 1, 6, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982); *see also United States v. Marion*, 404 U.S. 307, 313, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971) (holding Sixth Amendment speedy trial provision does not provide defendant protection until he or she is indicted). In *Chapman*, 289 S.C. at 44, 344 S.E.2d at 612–13, our supreme court additionally considered the purpose of the speedy trial guarantee in determining when a defendant's right to a speedy trial began to run.

The Sixth Amendment right to a speedy trial is thus not primarily intended to prevent prejudice to the defense caused by passage of time; that interest is protected primarily by the due process clause and by statutes of limitations. The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but never the less substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.

Jonais's and Maceo's arrest warrants were issued on June 22, 2002. Jason's arrest warrant was issued on October 31, 2002, and all Defendants were indicted on October 11, 2004. Defendants' trial began January 30, 2006. The time

from Defendants' arrests to trial was approximately three years and seven months. However, the duration from the time of Defendants' indictments to trial was approximately fifteen months. Jason submitted a motion and supporting memorandum to dismiss his criminal charges based on lack of a speedy trial. The trial court denied the motion to dismiss, explaining its reasoning pursuant to *Barker v. Wingo* and *State v. Brazell:*

1) Length of delay.

I'll be very frank with you, I am troubled by the fact that the delay in this case was three years and seven months since the time of the incident until the matter is brought to trial, and that does cause me a great deal of consternation, and it's something that I debated long and hard on, but when I reviewed the other three factors I have concluded that that is not sufficient reason to dismiss the case under the right for a speedy trial.

2) State's reasons for delay.

The record is very vague as to the reasons for the delay ... none of the dates are in the record that show what the reasons for the delay were. It's my view that the moving party bears the burden of pushing and submitting to the Court the length of time, and the unreasonableness of the delay as much as the State must present the reasonableness of the delay.

3) When and how Defendant asserted the right.

The only thing in the record is that the Defendant filed a motion for speedy trial and served it on the Solicitor, but there is nothing to show that any effort was ever made to bring the motion to the Court's attention, to schedule the motion, or to make a motion for bond reduction or anything else that would have gotten this matter before the Court before today....

4) Prejudice to Defendant.

In *Barker v. Wingo* the interests identified as being protected were to prevent pre-trial incarceration, again it seems like to me if that is a concern to the Defendant a motion could have been made to reduce the bond, or make some adjustment in the bond, nothing was done.

To minimize anxiety and concern of the accused, there is really nothing in the record to show that that is a concern, and finally to limit the possibility that the Defense would be impaired, and that's the prejudice issue.

I would find, based on the record before me there is no showing of prejudice. . . .

Defense counsel raised three issues alleging prejudice by the delay of Defendants' trial.

1) Toxicology reports indicated alcohol and cocaine in the victims' blood. Defense counsel complained the technicians who issued the reports were no longer available to testify.

2) Defense counsel claimed prejudice by the absence of the testimony from a deceased investigator who had taken a witness's statement.

3) A witness had moved out of state during the delay. Defendants contended the unavailability of the witness affected Defendants' ability to impeach.

The trial court indicated the contents of the toxicology report would be admissible and the unavailability of laboratory witnesses was not prejudicial. Moreover, an expert, other than one who conducted the toxicology tests, if qualified, could render an opinion regarding the results of those tests. The court ruled there was no showing that the statement of the witness to the deceased investigator would be used or that the witness would actually testify or need to be impeached. Furthermore, the trial court noted nothing in the record suggested what the out-of-state witness's testimony would be; therefore, it could have benefited either side. Under those circumstances, prejudice to Defendant had not been demonstrated.

The trial court conducted a lengthy review of the constitutional considerations at stake in the speedy trial issue. We discern no abuse of discretion in its ruling.

### III. Delayed Indictments

Defendant Jason Edwards additionally premises his motion to dismiss on the trial courts ruling concerning Rule 3, SCRCrimP. Specifically, Defendant alleges the State violated

Rule 3 by allowing over 800 days to elapse between the issue of the arrest warrant and the indictment. We disagree.

Rule 3(c), SCRCrimP, states:

Within ninety (90) days after receipt of an arrest warrant from the Clerk of Court, the solicitor shall take action on the warrant by (1) preparing an indictment for presentment to the grand jury, which indictment shall be filed with the Clerk of Court, assigned a criminal case number, and presented to the Grand Jury; (2) formally dismissing the warrant, noting on the face of the warrant the action taken; or (3) making other affirmative disposition in writing and filing such action with the Clerk of Court.

In *State v. Culbreath*, 282 S.C. 38, 316 S.E.2d 681 (1984) the South Carolina Supreme Court interpreted the rule requiring solicitors to act on a warrant within ninety days of its issue. The court agreed with and affirmed the trial court's holding that such a rule was administrative not jurisdictional. *Id.* Furthermore, the court stated a solicitor's delay does not within itself invalidate a warrant or prevent subsequent prosecution. *Id.* at 40, 316 S.E.2d at 681.

Here, the trial court clarified:

It's my view that Rule Three is a procedural rule. It deals with when the Magistrate must send the warrants over to the Clerk's office, when the Clerk's office must send the warrants to the Solicitor's office, and when the Solicitor is to present them to the Grand Jury. My view of that is that it is strictly procedural; that it is not substantive, it does not infer any substantive rights, and that is does not affect the jurisdiction of this Court nor the charges if the Rule is not followed.

The trial court's analysis is consistent with South Carolina precedent interpreting Rule 3 SCRCrimP.

## CONCLUSION

We hold the trial court properly adhered to the procedure set forth in *State v. Adams* in addressing the *Batson* motions raised in this case. We rule the *Barker v. Wingo* factors relevant to the speedy trial issue were thoroughly considered and analyzed. In addition, we conclude the trial court did not

err in finding the effect of Rule 3, SCRCrimP is administrative rather than substantive.

Accordingly, the trial court's rulings on the *Batson* issues and Defendant's Motion to Dismiss are

**AFFIRMED.**

HUFF and BEATTY, JJ., concur.