**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Supreme Court**

The State, Respondent,

v.

Julio Angelo Hunsberger, Petitioner.

Appellate Case No. 2015-000085

**ON WRIT OF CERTIORARI TO THE COURT OF APPEALS**

Appeal from Edgefield County
R. Knox McMahon, Circuit Court Judge

Memorandum Opinion No. 2016-MO-029
Heard December 2, 2015 – Filed October 12, 2016

**REVERSED**

Appellate Defender Kathrine Haggard Hudgins, of Columbia, for Petitioner.

Attorney General Alan McCrory Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Donald J. Zelenka, Senior Assistant Attorney General Melody Jane Brown, all of

Columbia, and Solicitor Donald V. Myers, of Lexington, all for Respondent.


**CHIEF JUSTICE PLEICONES:** We granted certiorari to review the decision of the Court of Appeals, which upheld the denial of Petitioner Julio Hunsberger's speedy trial motion. *State v. Hunsberger*, Op. No. 2014-UP-382 (S.C. Ct. App. filed Nov. 5, 2014). We now reverse. *See State v. Alexander Hunsberger*, Op. No. 27671 (S.C.Sup.Ct. filed October 12, 2016).

**REVERSED.**

**BEATTY and HEARN, JJ., concur. Acting Justice Jean H. Toal, dissenting in a separate opinion in which KITTREDGE, J., concurs.**

**ACTING JUSTICE TOAL:** I respectfully dissent. Because Julio Hunsberger (Petitioner) never made a demand for trial and the record indicates that Petitioner did not actually desire a speedy trial prior to the call of his case, it is my opinion that the majority erred in summarily reversing Petitioner's direct appeal pursuant to the Court's stated reasons for granting co-defendant Alexander Hunsberger's speedy trial motion in *State v. Alexander L. Hunsberger*.[1] Because I would affirm the trial court for the reasons stated in the court of appeals' opinion, *see State v. Julio Angelo Hunsberger*, Op. No. 2014-UP-382 (S.C. Ct. App. filed Nov. 5, 2014), I would dismiss the writ of certiorari as improvidently granted.

On September 3, 2001, Samuel Sturrup (the victim) was murdered. The State alleged Steven Barnes, Richard Cave, Antonio Griffin, and Charlene Thatcher began an assault on the victim in Georgia because Barnes believed the victim had stolen money from him. Barnes called Petitioner and his brother, Alexander Hunsberger, who drove from South Carolina to Augusta, where the group placed the victim in the trunk of Petitioner's car. Barnes, Cave, Griffin, and Thatcher followed Petitioner and Alexander in another vehicle to a remote area of Edgefield County. When they arrived, Barnes ordered everyone in the group to shoot the victim, and Barnes fired the fatal shot into the back of the victim's head.

Petitioner was arrested for murder on January 25, 2002.[2] On February 16, 2005, Petitioner was transferred to Georgia to face additional charges there. On September 12, 2006, he was convicted in Georgia for the crime of kidnapping with bodily injury and sentenced to life imprisonment. On September 30, 2011, Petitioner was transferred back to South Carolina.[3] The State first sought to call

---

[1] Op. No. 2014-UP-381 (S.C. Sup. Ct. filed Nov. 5, 2014) (finding Petitioner Alexander Hunsberger was deprived of his constitutional right to a speedy trial and dismissing his murder charge).

[2] Petitioner's first attorney was appointed in 2002. Because Petitioner complained throughout 2004 and 2005 that he had not seen his attorney, another public defender was appointed. This attorney was relieved in June 2010. Petitioner's final counsel was appointed in June 2010 and represented him at his trial.

[3] During this time, the State sought the death penalty against Petitioner's co-defendant, Steven Barnes. The State contends it chose to try Steven Barnes first of

Petitioner's case for trial in October 2011, but Petitioner moved for a continuance. Petitioner's South Carolina trial began on January 9, 2012, and for the first time during pre-trial motions, Petitioner invoked his right to a speedy trial and moved to dismiss his case.

"In all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." U.S. Const. amend. VI; *see also* S.C. Const. art. I, § 14 ("Any person charged with an offense shall enjoy the right to a speedy . . . trial."). The right has been described as "necessarily relative," in that "[i]t is consistent with delays and depends upon circumstances." *State v. Langford*, 400 S.C. 421, 441, 735 S.E.2d 471, 481 (2012) (quoting *Beavers v. Haubert*, 198 U.S. 77 (1905)). In other words, "[a] speedy trial does not mean an immediate one; it does not imply undue haste, for the [S]tate, too, is entitled to a reasonable time in which to prepare its case; it simply means a trial without unreasonable and unnecessary delay." *Id.* at 441, 735 S.E.2d at 481–82 (quoting *Wheeler v. State*, 247 S.C. 393, 400, 147 S.E.2d 627, 630 (1966)).

Even though the United States Supreme Court has provided that speedy trial issues should be resolved on an ad hoc basis, the Court has identified several factors to be considered when deciding speedy trial issues, including: (1) the length of the delay; (2) the reason(s) the government provides to justify the delay; (3) the timing of the defendant's assertion of his right to speedy trial; and (4) the prejudice resulting to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *see also State v. Foster*, 260 S.C. 511, 197 S.E.2d 280 (1973) (recognizing *Barker* factors as applicable under South Carolina law). The Supreme Court has explained that not one of these factors is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Barker*, 407 U.S. at 533. Rather, the factors are interrelated and "must be considered along 'with such other circumstances as may be relevant.'" *Langford*, 400 S.C. at 441, 735 S.E.2d at 482 (quoting *Barker*, 407 U.S. at 533). Thus, courts should weigh "'the conduct of both the prosecution and the defense.'" *Id.* at 441–42, 735 S.E.2d at 482 (quoting *Barker*, 407 U.S. at 529–30).

The "triggering mechanism" of the *Barker* analysis is the length of the delay. *Id.* at 442, 735 S.E.2d at 482 (citing *Barker*, 407 U.S. at 530). When a defendant asserts his speedy trial right, the court "should not even examine the remaining factors '[u]ntil there is some delay which is presumptively prejudicial.'" *Id.*

the co-defendants. Barnes was arrested in January 2002, convicted in Georgia for kidnapping in 2003, and sentenced to death in South Carolina in September 2010.

(quoting *Barker*, 407 U.S. at 530). "The clock starts running on a defendant's speedy trial right when he is 'indicted, arrested, or otherwise officially accused,' and therefore we are to include the time between arrest and indictment." *Id.* (quoting *United States v. MacDonald,* 456 U.S. 1, 6 (1982)). Notably, however, "even the length of time necessary to trigger the full inquiry 'is necessarily dependent upon the peculiar circumstances of the case.'" *Id.* (quoting *Barker*, 407 U.S. at 530–31). Further, the Supreme Court has explained that "as the term is used in this threshold context, 'presumptive prejudice' does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry." *Doggett v. United States*, 505 U.S. 647, 652, n.1 (1992).

Let us assume that the time period in question triggers further inquiry into the delay.[4] This case yields two additional, but notable, distinctions from *State v. Alexander Hunsberger* which in my opinion weigh very heavily against reversal in this case.[5] First, Petitioner never made a demand for a speedy trial until after his trial began. Further, during the hearing on the motion, Petitioner's counsel admitted he chose not invoke the speedy trial right as a matter of strategy.

As noted by the trial court, the fact that Petitioner did not make a demand for trial does not operate as an automatic procedural bar to hearing the motion to dismiss based on the invocation of the speedy trial right. Instead, the failure to make a demand for trial is merely another factor in the *Barker* analysis. *See State v. Waites*, 270 S.C. 104, 108, 240 S.E.2d 651, 653 (1978) (recognizing *Barker*'s explicit rejection of the notion that the failure to demand a trial constituted the waiver of the speedy trial right).

However, this Court has acknowledged that "the manner in which the defendant asserts his right [to a speedy trial] is an important factor to be considered" when analyzing whether a defendant speedy trial motion should be granted, and *Barker* "'emphasize[d] that failure to assert the right will make it

---

[4] The timeline in Alexander Hunsberger's case and Petitioner's case is very similar.

[5] In *State v. Alexander Hunsberger*, the Court found that of the delay chargeable to the State, the State's reasons for the delay in Alexander's prosecution were insufficient to overcome the prejudice befalling him in light of the presumptively prejudicial length of the delay and the fact that Alexander asserted his right to a speedy trial three times. *See* Op. No. 27671 (S.C. Sup. Ct. filed October 12, 2016). I disagree that that case should be reversed. *See id.* (Toal, J., dissenting).

difficult for a defendant to prove that he was denied a speedy trial.'" *Id.* (quoting *Barker*, 407 U.S. at 532). In *State v. Waites*, the defendant was arrested on August 26, 1974, and on that date, his attorney requested a preliminary hearing which was then scheduled for September 25, 1974. *Id.* at 106, 240 S.E.2d at 652. Due to scheduling changes and the magistrate's recusal and subsequent transfer of the case to another magistrate, the preliminary hearing was not held until December 29, 1976—two years and four months after the service of the defendant's arrest warrants. *Id.* at 106–07, 240 S.E.2d at 652. There, the Court found "significant" the fact that Waites "waited approximately twenty-eight months before claiming he had been denied his constitutional right to a speedy trial" even though he had been represented by counsel. *Id.* at 109, 240 S.E.2d at 653 (citation omitted)). In my opinion, Petitioner's failure to assert his speedy trial right until after trial is likewise significant in balancing the *Barker* factors. As noted by the court of appeals,

> Although almost ten years passed between [Petitioner's] arrest and his trial, the trial court noted that [Petitioner] was only detained in South Carolina from January 25, 2002, to February 16, 2005, before he was released to Georgia. This three-year period would have been sufficient to trigger further review of his speedy trial rights; *however, he never asserted them*.

Op. No. 2014-UP-382 (S.C. Ct. App. filed Nov. 5, 2014) (emphasis added).

Unlike cases in which a defendant merely sleeps on his right to a speedy trial, Petitioner's failure to raise his right is made more significant because it was intentional. Here, the delay in resolution—apart from the State's given reasons of the Georgia prosecution and Steven Barnes capital murder case delay—was occasioned partly as a matter of trial strategy. In fact, counsel for Petitioner stated he was hoping that the prosecution of Steven Barnes would lead to the State choosing not to prosecute Petitioner due to his life sentence in Georgia. At the hearing, Petitioner's counsel explained, "Sometimes that [asserting the right] can be a dangerous proposition. You may get just what you ask for." Thus, the record clearly evinces a desire on Petitioner's part not to go to trial.

In *Barker*, the defendant did not object to the Commonwealth of Kentucky seeking sixteen separate continuances in his trial date. In assessing the speedy trial motion, the Supreme Court stated, "[B]arring extraordinary circumstances, we [should] be reluctant indeed to rule that a defendant was denied this constitutional right on a record that strongly indicates, as does this one, *that the defendant did not want a speedy trial*." 407 U.S. at 536 (emphasis added). This record makes clear

that Petitioner sought to delay trial to reap the potential benefits from the delay. Therefore, it is my opinion that this case certainly does not present the extraordinary circumstances envisioned by *Barker* in which a court could find Petitioner's right to a speedy trial was violated in the face of his stated intent to avoid trial pending the outcome of the Barnes murder trial.

As the United States Supreme Court has made clear again and again, the assessment of the assertion of a speedy trial right is extremely fact-specific. In my opinion, the majority erred in relying on *State v. Alexander Hunsberger* to summarily reverse this case. Because I agree with the court of appeals that the trial judge should be affirmed, I would dismiss the writ of certiorari as improvidently granted.

**KITTREDGE, J., concurs.**